**In re DATA ACCESS SYSTEMS SECURITIES LITIGATION.**

**Appeal of TOLINS & LOWENFELS & Roger A. Tolins.**

**Appeal of I. KAHLOWSKY AND CO. and Peter Cunicelli.**

**Nos. 87–5205, 87–5385.**

United States Court of Appeals, Third Circuit.

Argued Nov. 19, 1987.

Reargued in banc March 8, 1988.

Decided April 8, 1988.

See also 103 F.R.D. 130.

Ronald J. Riccio (argued), John B. Livelli, Robinson, Wayne, Levin, Riccio & LaSala, Newark, N.J., for appellants Lowenfels and Tolins.

Francis P. Devine, III (argued), Guy A. Cellucci, Mark S. Gurevitz, White and Williams, Philadelphia, Pa., for appellants I. Kahlowsky and Cunicelli.

Leonard Barrack, Gerald J. Rodos (argued), Samuel R. Simon, John G. Narkin, Barrack, Rodos & Bacine, Philadelphia, Pa., for appellees plaintiff class of Data Access Systems, Inc. shareholders.

Argued Nov. 19, 1987.

Before SEITZ, HUTCHINSON, and ALDISERT, Circuit Judges.

Reargued in banc March 8, 1988.

Before GIBBONS, Chief Judge and SEITZ, WEIS, HIGGINBOTHAM, SLOVITER, BECKER, MANSMANN, GREENBERG, HUTCHINSON, SCIRICA and ALDISERT, Circuit Judges.

## OPINION OF THE COURT

ALDISERT, Circuit Judge.

We visit again the troublesome question presented in *Biggans v. Bache Halsey Stuart Shields, Inc.*, 638 F.2d 605 (3d Cir.1980), and *Roberts v. Magnetic Metals Co.*, 611 F.2d 450 (3d Cir.1979), to determine the applicable limitations period for complaints charging violations of section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5 promulgated thereunder by the Securities and Exchange Commission, 17 C.F.R. § 240.10b–5 (1987). We are required to decide two important issues: whether subsequent Supreme Court decisions in *Agency Holding Corp. v. Malley–Duff & As-*

*socs., Inc.,* —— U.S. ——, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987), *Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), and *DelCostello v. International Bhd. of Teamsters,* 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), and our decision in *Malley–Duff & Assocs., Inc. v. Crown Life Ins. Co.,* 792 F.2d 341 (3d Cir.1986), *aff'd sub nom. Agency Holding Corp. v. Malley–Duff & Assocs., Inc., supra,* require us to re-examine both the reasoning and holdings in *Biggans* and *Roberts;* if so, we must determine the proper limitations period. We may make this re-examination freely and without constraint of panel precedents because we are assembled in a court in banc.

The district court determined that the limitations period for this case should be borrowed from New Jersey's six-year statute encompassing common law fraud actions. N.J.S.A. § 2A:14–1. Contending that the shorter, two-year statute of limitations under New Jersey's blue sky law, N.J.S.A. § 49:3–71, should apply, the defendants successfully moved for certification of the district court's determination pursuant to 28 U.S.C. § 1292(b). The court stayed its proceedings pending review by us. The defendants subsequently filed a petition for review with this court, which was granted on March 23, 1987. Jurisdiction was proper in the district court based on 15 U.S.C. § 78aa, 28 U.S.C. § 1331, as the case involves claims under section 10(b) of the 1934 Act and Rule 10b–5. We have jurisdiction under 28 U.S.C. § 1292(b).

## I.

This certified class-action lawsuit was brought on behalf of those who purchased common stock of Data Access Systems, Inc. from October 31, 1978, through June 22, 1981. These shareholders filed their initial complaint on June 23, 1981, immediately following certain public disclosures of fraudulent business and stock trading activities involving Data Access. On October 29, 1981, the Securities and Exchange Commission filed a complaint seeking injunctive and other relief against Data Access, related companies, and several individuals alleging that they violated federal securities laws. Data Access subsequently filed for protection under Chapter 11 of the federal bankruptcy code.

The plaintiffs proceeded to file second and third amended complaints. The case at hand relates to the third amended complaint, which named the defendants relevant to the present appeal: Roger Tolins, a New York attorney; Tolins & Lowenfels, his law firm; Peter Cunicelli, an accountant; and I. Kahlowsky, Cunicelli's accounting firm. The third amended complaint stated that Data Access retained Tolins and his firm to represent the company in connection with a February 1979 public offering and to assist it in preparing and filing Form 10–Ks for fiscal years ending August 31, 1978, 1979, and 1980. The plaintiffs alleged that in the registration statement and Form 10–Ks, Data Access represented, in language drafted by Tolins, that it had no potential liability in connection with certain "sales" to its "affiliated" companies, Mark Serv Co., Transnet Corp., and Olympic International Leasing Co. Mark Serv is a partnership owned by, *inter alia,* certain officers, shareholders, and associated persons of Data Access.

The plaintiffs contend that Tolins and his firm knew or reasonably should have known that the representations contained in the prospectus and Form 10–Ks were materially inaccurate, because they represented that Data Access had no ongoing liabilities in connection with the 'cluster transactions between the company and its affiliates. The complaint alleged that Tolins ignored or disregarded clear evidence that such representations were false, and further stated that attorney Tolins participated in, aided and abetted, and conspired with the principals of Data Access and others to defraud the shareholder-plaintiffs. Plaintiffs alleged that Tolins and his firm violated section 10(b) of the 1934 Act and Rule 10b–5, and committed common law fraud and negligence.

The third amended complaint also named as defendants Cunicelli and his accounting firm, who were auditors for Mark Serv. The complaint noted that Touche Ross & Co., Data Access' auditors, requested Cunicelli and his company to provide informa-

tion concerning Mark Serv's business dealings with Data Access. In response, "Kahlowsky and Cunicelli advised Touche Ross, *inter alia,* that there were no liabilities and guarantees on the part of [Data Access] to the Mark Serv lending banks, and that said banks were not relying upon [Data Access] or upon any obligation undertaken by [Data Access] as security for their loans to Mark Serv." App. at Vol. I, 183a. Plaintiffs contend that when Cunicelli and I. Kahlowsky made their representations to Touche Ross, they knew that Data Access was contingently liable to the Mark Serv lending banks. The complaint stated that Cunicelli and Kahlowsky fraudulently and recklessly misrepresented and failed to disclose to Touche Ross the material facts with respect to Data Access' obligations to Mark Serv and to Mark Serv's lending banks; it alleged that the accountants participated in, aided and abetted, and conspired with the principals of Data Access and others to defraud the shareholder-plaintiffs. Here too, plaintiffs allege that the accountant appellants violated section 10(b) of the 1934 Act and Rule 10-5, and committed common law fraud and negligence.

## II.

Because this appeal involves the selection, interpretation, and application of legal precepts, the standard of review is plenary. *Dent v. Cunningham,* 786 F.2d 173, 175 (3d Cir.1986). The scope of this court's review is generally governed by the controlling questions of law set forth in the district court's certification order under 28 U.S.C. § 1292(b). *Akerly v. Red Barn Sys., Inc.,* 551 F.2d 539, 543 (3d Cir.1977). However, this court may consider all grounds that might require reversal of the order appealed from. *Merican, Inc. v. Caterpillar Tractor Co.,* 713 F.2d 958, 962 n. 7 (3d Cir.1983), *cert. denied,* 465 U.S. 1024, 104 S.Ct. 1278, 79 L.Ed.2d 682 (1984).

The district court certified two questions for review pursuant to section 1292(b):

a) For the statute of limitations found in the New Jersey Blue Sky law to apply to plaintiffs' security claims herein, need plaintiffs' claims state a viable cause of action under said blue sky law?

b) If the answer to the foregoing question is in the affirmative, does plaintiffs' Third Considered Amended Class Action Complaint, alleging that defendants substantially participated and/or aided and abetted in the sale of securities to plaintiffs, state a viable cause of action against defendants as "sellers" under the applicable liability provision of the New Jersey Blue Sky law?

App. at 225. (Technically speaking, the district court certified three questions. Because the wording of the second question embraces both the issues and parties in the third question, we proceed as if the court certified two questions.)

Depending upon our answers to these questions, we are required to affirm or reverse the district court's determination as to the limitations period. The first certified question squarely presents us with occasion to consider the effect of the subsequent Supreme Court decisions in *Malley-Duff, Wilson,* and *DelCostello* on our holdings in *Biggans* and *Roberts.* The second certified question asks whether plaintiffs' allegations against the defendant accountants and lawyers state a claim under New Jersey's blue sky law, and therefore are governed by the statute of limitations set forth in that law. Our approach to the second question will depend upon our answer to the first.

## III.

At the outset we recognize that the Supreme Court has yet to rule on the applicable limitations period for a section 10(b) and Rule 10b–5 action. *See Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 210 n. 29, 96 S.Ct. 1375, 1389 n. 29, 47 L.Ed.2d 668 (1976); *Roberts v. Magnetic Metals Co.,* 611 F.2d 450, 461 (3d Cir.1979) (Seitz, C.J., dissenting). The absence of a uniform limitations period in such actions has been described by Judge Easterbrook as "one tottering parapet of a ramshackle edifice. Deciding what features of state periods of limitation to adopt for which federal statutes wastes untold hours." *Norris v.*

*Wirtz,* 818 F.2d 1329, 1332 (7th Cir.), *cert. denied,* — U.S. ——, 108 S.Ct. 329, 98 L.Ed.2d 356 (1987). Judge Easterbrook has lamented:

> Never has the process been more enervating than in securities law. There are many potentially analogous state statutes, with variations for different kinds of securities offenses and different circumstances that might toll the period of limitations. Both the bar and scholars have found the subject vexing and have pleaded, with a unanimity rare in the law, for help. E.g., Louis Loss, *Fundamentals of Securities Regulation* 1164–75 (1983); Thomas Lee Hazen, *The Law of Securities Regulation* § 13.8 & n. 2 (1985) (collecting authority); *Report of the Task Force on Statute of Limitations for Implied Actions,* 41 Bus.Law. 645 (1986). As the ABA's Committee on Federal Regulation of Securities observed, *id.* at 646–47, 656–57, the courts of appeals disagree on every possible question about limitations periods in securities cases. Only Congress or the Supreme Court can bring uniformity and predictability to this field[.]

*Id.* Yet we first must review the reasoning and holdings of our court in *Biggans v. Bache Halsey Stuart Shields, Inc.,* 638 F.2d 605 (3d Cir.1980), and *Roberts,* 611 F.2d 450.

We faced for the first time in *Roberts* the question now before us. There, a selling shareholder brought suit against a corporation, its merger partner, and their broker agent alleging that the defendants violated sections 10(b) and 14(a) of the Securities Exchange Act by making material misrepresentations and omissions in connection with the solicitation of shareholder approval of a merger. There were three opinions in the case. Two judges, in separate opinions, decided that the suit was governed by the six-year statute of limitations that New Jersey applied to actions for common law fraud, and not by the two-year statute provided in New Jersey's blue sky law.

In *Roberts,* Judge Gibbons was of the view that in federal securities litigation, the absence of a federal statute of limitations required that we defer to the forum state's policy of repose. If the state court would entertain an action for the relief sought, no state policy of repose was implicated. The relevant inquiry under Judge Gibbons' analysis was whether the lawsuit would be time barred if brought in state court. Significantly, Judge Gibbons stated that "the Supreme Court has announced the rule that we must look not for an analogous federal limitations period, but for an analogous forum state limitations period.... Much can be said, perhaps, for a different rule in a different context directing a federal court to statutes of limitations governing analogous federal causes of action. But the rule has been otherwise for many years, and an inferior court is not free to change it." *Roberts,* 611 F.2d at 454. Judge Sloviter had a different approach. She stressed the need to identify the state statute of limitations that best comports with the policy behind the federal cause of action.

Writing in dissent, then Chief Judge Seitz expanded upon Judge Gibbons' reference to a federal statute of limitations. Noting that several commentators have argued that federal courts should look to the most analogous federal statute for a Rule 10b–5 limitations period, Chief Judge Seitz stated: "Were I writing on a clean slate, I would be inclined to adopt that approach. The Supreme Court, however, has rarely deviated from the normal rule of looking to state statutes." *Id.* Subsequent to the statements by Judge Gibbons and Chief Judge Seitz, the Supreme Court in *Agency Holding Corp. v. Malley–Duff & Assocs., Inc.,* — U.S. ——, 107 S.Ct. 2759, 97 L.Ed. 2d 121 (1987), and *DelCostello v. International Bhd. of Teamsters,* 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), did deviate. The Court directed us to apply the most analogous federal statute of limitations to certain federal causes of action.

Our court's latest position in section 10(b) and Rule 10b–5 cases, announced prior to *DelCostello, Wilson,* and *Malley–Duff,* was set forth in *Biggans v. Bache Halsey Stuart Shields, Inc.,* 638 F.2d 605, 610 (3d Cir.1980):

We therefore conclude that the reasoning which underlay the decision of this court to apply the New Jersey common law fraud statute of limitations in *Roberts* compels a similar result in this case. Where the state Blue Sky law does not provide the plaintiff with a cause of action for the relief requested, but common law does, and where the state legislature framed its statute to supplement, rather than supplant, available common law remedies, it is the common law limitations period which must be applied in federal securities actions.

In dissent, Judge Weis commented:

> The fact that the majority approach depends upon a detailed analysis of the underlying facts in the case at hand, as well as an uncertain prediction of state statutory interpretation, reveals the difficulties with utilizing an "exact match" approach. I believe it would be far preferable in a suit under § 10(b) of the Securities Act to look to the statute of limitations of the state's Blue Sky law. It not only furnishes a guidepost to the public, but gives some certainty to what is now a confused and inconsistent body of law.

*Id.* at 612 (Weis, J., dissenting). Judge Weis also expressed certain discomforts with case law then present in our court. He observed that because the plaintiff had alleged churning in securities practices, he was entitled to the state catch-all general fraud statute of limitations because the Pennsylvania blue sky statute provided no relief for such a private right of action. But had the plaintiff based his claim on a sale to or purchase from another, then the one-year limitation of the state's securities law would apply because the Pennsylvania statute specifically authorized such a private right of action. "Even though both suits would be brought under Section 10(b), therefore, one would have to be filed within one year—the other within two or six years. This continues the pattern of inconsistency begun in *Roberts*, where a seller of securities in New Jersey has six years to bring his suit under § 10(b), but a buyer presumably has only two years under the same statute. Thus, under this court's con-struction, no uniform statute of limitations for all Section 10(b) cases exists even within the same state." *Id.*

Our present case law calls for difficult interpretations of state limitations periods. We are required to examine each contention of a federal securities complaint with great particularity to determine whether the state blue sky statute tracks the particular federal claim, and if not, to determine claim-by-claim which other state limitations period will apply depending upon the resemblance between the precise federal claim and those based in state or common law actions. We are informed that our decisions have not provided bright-line guidance to our district courts in all section 10(b) and Rule 10b–5 cases. The district judge here said that "the Third Circuit has not settled the statute of limitations issue." App. at 226a. Chief Judge Latchum, a veteran jurist extremely experienced in securities matters, has commented:

> Because of the narrow ground upon which both *Roberts* and *Biggans* were decided and the lack of a firm consensus as to the proper guidelines to be applied, it is difficult to predict what effect these opinions hold for the circumstances posed by the present complaint. Some limited guidance, however, can be extrapolated from the various opinions. It is safe to assume that the Third Circuit adheres to the rudimentary principle that when alternative limitations periods are supplied by state law, the court must select that state statute of limitations which best comports with the substantive federal policies advanced by Rule 10b–5. Likewise the Court of Appeals has indicated that the concurrent operation of the federal and state securities statutes makes the Blue Sky statute of limitations in most cases the logical candidate for regulating 10b–5 claims. This presumption, however, is subject to one significant exception. If the underlying state Blue Sky law does not afford a civil damage action to remedy the behavior challenged by the 10b–5 claim and the plaintiff would be relegated to a common law fraud action for state relief, the

courts must apply the fraud limitations provision to the 10b–5 action. *Accord Sharp v. Coopers & Lybrand,* 649 F.2d 175, 191–92 (C.A.3, 1981); *McNeal v. Paine, Webber, Jackson & Curtis, Inc.,* 598 F.2d 888, 894 (C.A.5, 1979). Beyond these constraints, however, the district courts are free to fill the interstices left open by Congress' failure to enact a limitations provision for remedies implied under the securities laws.

*Hill v. Der,* 521 F.Supp. 1370, 1382–83 (D.Del.1981).

It is against this backdrop that we examine the teachings contained in recent relevant Supreme Court opinions.

### IV.

In *Agency Holding Corp. v. Malley–Duff & Assocs., Inc.,* ⸺ U.S. ⸺, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987), the Court provided us with a formula to approach our present problem. In *Malley–Duff,* the Court stated that "[a]lthough it has been suggested that federal courts always should apply the state statute of limitations most analogous to each individual case whenever a federal statute is silent on the proper limitations period, see *Wilson v. Garcia,* [471 U.S.] at 280 [105 S.Ct. at 1949] (dissent); *DelCostello v. Teamsters,* 462 U.S. 151, 174 [103 S.Ct. 2281, 2295, 76 L.Ed.2d 476] (1983) (O'Connor, J., dissenting), *a clear majority of the Court [in DelCostello] rejected such a single path."* ⸺ U.S. at ⸺, 107 S.Ct. at 2762 (emphasis added).

The Court then outlined the procedure to be followed in determining the appropriate statute of limitations for a federal claim. The first step involves characterizing the federal claim; this is generally a question of federal law. *Id.; see Wilson v. Garcia,* 471 U.S. 261, 269–70, 105 S.Ct. 1938, 1943–44, 85 L.Ed.2d 254 (1985). In this initial step, we must determine whether all claims arising out of the federal statute should be characterized in the same way, or whether they should be evaluated differently depending upon the varying factual circumstances and legal theories presented in each individual case. *Malley–Duff,* ⸺

U.S. at ⸺, 107 S.Ct. at 2762; *see Wilson,* 471 U.S. at 268, 105 S.Ct. at 1943.

Once this characterization is made, the next inquiry is whether a federal or state statute of limitations should be used. The Supreme Court has held that the Rules of Decision Act, 28 U.S.C. § 1652, requires application of state statutes of limitations to federal statutory actions not covered by an express limitations period unless "a timeliness rule drawn from elsewhere in federal law should be applied." *DelCostello v. International Bhd. of Teamsters,* 462 U.S. 151, 159 n. 13, 103 S.Ct. 2281, 2288 n. 13, 76 L.Ed.2d 476 (1983). In some circumstances, the characterization of a federal claim has led the Court to conclude that "state statutes of limitations can be unsatisfactory vehicles for the enforcement of federal law. In those instances, it may be inappropriate to conclude that Congress would choose to adopt state rules at odds with the purpose or operation of federal substantive law." *DelCostello,* 462 U.S. at 161, 103 S.Ct. at 2289. The Court in *Del-Costello* determined that when a rule from elsewhere in federal law clearly provides a closer analogy than available state statutes, and when federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial lawmaking, "we have not hesitated to turn away from state law." *Id.* at 171–72, 103 S.Ct. at 2294–95; *see also Malley–Duff,* ⸺ U.S. at ⸺, 107 S.Ct. at 2767 (four-year statute of limitations governing Clayton Act civil enforcement suits applies to RICO civil enforcement actions); *Occidental Life Ins. Co. v. EEOC,* 432 U.S. 355, 97 S.Ct. 2447, 53 L.Ed.2d 402 (1977) (adopting federal statute of limitations for EEOC enforcement actions); *McAllister v. Magnolia Petroleum Co.,* 357 U.S. 221, 78 S.Ct. 1201, 2 L.Ed.2d 1272 (1958) (federal limitations period applied to unseaworthiness action under general admiralty law); *Holmberg v. Armbrecht,* 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743 (1946) (refusing to apply state limitations period to action to enforce federally created equitable right).

## V.

This court has already recognized the necessity for establishing a uniform limitations period when we resort to "borrowing" state law. In *Malley–Duff & Assocs., Inc. v. Crown Life Ins. Co.*, 792 F.2d 341 (3d Cir.1986), *aff'd sub nom. Agency Holding Corp. v. Malley–Duff & Assocs., Inc.*, —— U.S. ——, 107 S.Ct. 2759, 97 L.Ed. 2d 121 (1987), one of the first "borrowing" cases in this court subsequent to *DelCostello* and *Wilson*, both the majority and concurring opinions rejected what Judge Weis had previously described as the "color-matching" or the claim-by-claim analysis followed by the majority opinion writers in *Biggans* and *Roberts*. It appears that this court, under the strong direction of the Supreme Court, has now heeded the instruction of *Wilson* that " '[f]ew areas of the law stand in greater need of firmly defined, easily applied rules than does the subject of periods of limitations.' " *Wilson*, 471 U.S. at 266, 105 S.Ct. at 1942 (quoting *Chardon v. Fumero Soto*, 462 U.S. 650, 667, 103 S.Ct. 2611, 2621, 77 L.Ed. 2d 74 (1983) (Rehnquist, J., dissenting)). We essentially concluded in *Crown Life* that this objective was not served by an approach whereby the limitations period for each federal claim would "depend upon the particular facts or precise legal theory of each claim." *Wilson*, 471 U.S. at 274, 105 S.Ct. at 1946. A factual, claim-based approach to characterizing the case for limitations purposes would not promote "[t]he federal interests in uniformity, certainty, and the minimization of unnecessary litigation." *Id.* at 275, 105 S.Ct. at 1947. Thus, speaking for the court in *Crown Life*, Judge Higginbotham stated:

This case provides abundant evidence that a particularized approach to borrowing statutes of limitations "inevitably breeds uncertainty and time-consuming litigation." Even RICO claims based on "garden variety" business disputes might be analogized to breach of contract, fraud, conversion, tortious interference with business relations, misappropriation of trade secrets, unfair competition, usury, disparagement, etc., with a multiplicity of applicable limitations periods. A state may even have different limitations periods for common law fraud and securities fraud.... More extreme cases might include allegations sounding in assault, battery, false imprisonment, infliction of emotional distress, abuse of process, or trespass to land or chattels. The fact that RICO requires at least two predicate acts in all cases makes it even more likely that more than one analogy will have force in a given case. "The current approach is virtually guaranteed to incite complex and expensive litigation over what should be a straightforward matter."

*Crown Life*, 792 F.2d at 348–49 (footnote omitted) (quoting A.B.A. Section of Corporation, Banking and Business Law, *Report of the Ad Hoc Civil RICO Task Force* 391–92 (1985)).

We believe that the case-by-case approach utilized by the majority opinion writers in *Biggans* and *Roberts* must be modified if we are to be consistent with the later Supreme Court decisions in *DelCostello*, *Wilson*, and *Malley–Duff*. *See also Goodman v. Lukens Steel Co.*, 777 F.2d 113, 119–20 (3d Cir.1985) (court, applying *Wilson*, adopts uniform statute of limitations for actions brought under 42 U.S.C. § 1981), *aff'd*, —— U.S. ——, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987).

We are impressed by the approach taken by Judge Higginbotham in *Crown Life*. If we adopted the same reasoning in section 10(b) and Rule 10b–5 cases, we would minimize "uncertainty and time-consuming litigation." *Crown Life*, 792 F.2d at 348. Just as civil RICO is similar to actions under 42 U.S.C. § 1983 in that both encompass numerous and diverse topics and subtopics, so does section 10(b) and Rule 10b–5 embrace a galaxy of actions. Some of these actions are brought by securities purchasers. *Diamond v. LaMotte*, 709 F.2d 1419 (11th Cir.1983); *Herm v. Stafford*, 663 F.2d 669 (6th Cir.1981); *White v. Sanders*, 650 F.2d 627 (5th Cir.1981); *Sharp v. Coopers & Lybrand*, 649 F.2d 175, 191–92 (3d Cir.), *cert. denied*, 455 U.S. 938, 102 S.Ct. 1427, 71 L.Ed.2d 648 (1981); *see Friedlander v. Troutman, Sanders, Lock-*

*erman,* 788 F.2d 1500, 1504–05 (11th Cir. 1986); *Landy v. FDIC,* 486 F.2d 139, 156–57 (3d Cir.1973), *cert. denied,* 416 U.S. 960, 94 S.Ct. 1979, 40 L.Ed.2d 312 (1974). Others are brought by sellers of securities. *Roberts,* 611 F.2d at 452–53; *see Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 731–32, 95 S.Ct. 1917, 1923–24, 44 L.Ed.2d 539 (1975) (plaintiff class for purposes of section 10(b) and Rule 10b–5 private damage actions is limited to purchasers and sellers of securities). *See generally* A. Bromberg, *Securities Law: Fraud—SEC Rule 10b–5* § 2.3 (800), at 26 (1973); Schulman, *Statutes of Limitations in 10b–5 Actions,* 13 Wayne L.Rev. 635, 646 (1967). Some of the sellers' actions do not come within the ambit of state blue sky laws, because these laws often apply only to purchasers of securities, *Roberts,* 611 F.2d at 453, or do not allow recovery of damages by the plaintiffs involved. *See Biggans,* 638 F.2d at 610; *see generally Report of the Task Force on Statute of Limitations for Implied Actions,* 41 Bus. Law. 645, 652 (1986). In the current action, certain shareholders brought suit against the attorneys and accountants of a corporate seller of securities; there is a substantial question whether New Jersey's blue sky law creates liability for non-sellers in these circumstances. *See* N.J.S.A. §§ 49:3–71(a)(2); 49:3–71(b).

We therefore conclude that the case law in this court now suggests in section 10(b) and Rule 10b–5 actions the same determination it made in RICO cases: the courts must select "the *one* most appropriate statute of limitations for *all* civil [section 10(b) and Rule 10b–5] claims." *Crown Life,* 792 F.2d at 349; *see Friedlander,* 788 F.2d at 1505 (adopting a uniform limitations period for all sections 10(b) and Rule 10b–5 claims).

## VI.

In looking for "the *one* most appropriate statute," we must not make the error of equating private rights of actions under section 10(b) and Rule 10b–5 with available common law fraud actions. The Supreme Court instructs that section 10(b) and Rule 10b–5 actions and common law fraud suits are two distinct breeds. Thus, the Court has refused to impose in the section 10(b) schema the traditional common law requirement in state fraud proceedings that plaintiffs establish their case by clear and convincing evidence. *Herman & MacLean v. Huddleston,* 459 U.S. 375, 390, 103 S.Ct. 683, 691, 74 L.Ed.2d 548 (1983). "Reference to common-law practices can be misleading, ... since the historical considerations underlying the imposition of a higher standard of proof have questionable pertinence here." *Id.* at 388, 103 S.Ct. at 690; *see Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 744–45, 95 S.Ct. 1917, 1929–30, 44 L.Ed.2d 539 (1975) ("[T]he typical fact situation in which the classic tort of misrepresentation and deceit evolved was light years away from the world of commercial transactions to which Rule 10b–5 is applicable.").

Moreover, the antifraud provisions of the securities laws are not coextensive with common law doctrines of fraud. "Indeed, an important purpose of the federal securities statutes was to rectify perceived deficiencies in the available common-law protections by establishing higher standards of conduct in the securities industry." *Huddleston,* 459 U.S. at 389, 103 S.Ct. at 691; *see Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 203, 96 S.Ct. 1375, 1385, 47 L.Ed. 2d 668 (1976); *McClure v. Borne Chemical Co.,* 292 F.2d 824, 834 (3d Cir.), *cert. denied,* 368 U.S. 939, 82 S.Ct. 382, 7 L.Ed.2d 339 (1961). In *Basic Inc. v. Levinson,* —— U.S. ——, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988), the Court stated that "[t]he modern securities markets, literally involving millions of shares changing hands daily, differ from the face-to-face transactions contemplated by early fraud cases[.]"

In *SEC v. Capital Gains Research Bureau, Inc.,* 375 U.S. 180, 195, 84 S.Ct. 275, 284, 11 L.Ed.2d 237 (1963), the Court indicated that common law doctrines of fraud that developed around transactions involving tangible items of wealth are ill-suited to the sale of intangibles such as securities. *See also* 3 L. Loss, *Securities Regulation* 1435 (2d ed. 1961). In *Blue Chip Stamps,* the Court decided the question of whether

there should be an exception to the rule that only purchasers or sellers of securities may bring an action under Rule 10b–5. The Court traced the evolution of the common law tort of misrepresentation and deceit, "to which a claim under Rule 10b–5 certainly has some relationship," 421 U.S. at 744, 95 S.Ct. at 1929, *see Peil v. Speiser*, 806 F.2d 1154, 1160 (3d Cir.1986), but explained the differences between that tort and relief under 10b–5. The Court noted that although one is required to be a purchaser or seller of securities in order to recover under section 10(b) or Rule 10b–5, "it has long been established in the ordinary case of deceit that a misrepresentation which leads to a refusal to purchase or to sell is actionable in just the same way as a misrepresentation which leads to the consummation of a purchase or sale." 421 U.S. at 744, 95 S.Ct. at 1929; *see Basic,* —— U.S. at ——, 108 S.Ct. at 990 n. 22 (actions under Rule 10b–5 are distinct from common law deceit and misrepresentation claims). It is therefore clear that, far from being a mirror image or a reasonable facsimile of common law fraud, actions brought under section 10(b) and Rule 10b–5 appear to be *sui generis.*

Accordingly, because the Court has condemned a practice of dealing with section 10(b) and Rule 10b–5 that involves "a shifting and highly fact-oriented disposition of the issue," *Blue Chip Stamps,* 421 U.S. at 755, 95 S.Ct. at 1934, we believe that the Court is sending strong signals that we should adopt a uniform limitations period in these cases rather than try to color match each case with shifting state fraud statutes of repose.

Our very difficult task, however, is to decide whether a federal or a state statute of limitations should be borrowed. To do this, we must proceed on the assumption that Congress intends to borrow state law; we must borrow a state statute unless we find that state statutes of limitations are an unsatisfactory vehicle for the enforcement of this type of federal securities law. *Malley–Duff,* —— U.S. at ——, 107 S.Ct. at 2762; *DelCostello,* 462 U.S. at 171–72, 103 S.Ct. at 2294–95. We now must determine whether a rule from elsewhere in federal law clearly provides a closer analogy than state statutes, and whether the federal policies at stake and the practicalities of litigation make the federal rule a significantly more appropriate vehicle.

## VII.

■ We conclude that the federal schema of limitations expressly set forth in the Securities Exchange Act of 1934 "clearly provides a closer analogy than available state statutes," *DelCostello,* 462 U.S. at 172, 103 S.Ct. at 2294, and that "the federal policies at stake [in section 10(b) and Rule 10b–5 actions] and the practicalities of litigation make [the federal] rule a significantly more appropriate vehicle for interstitial lawmaking." *Id.* We now turn to those sections of federal securities law that are companion provisions to section 10(b).

Congress provided for statutes of repose in numerous provisions of the Securities Acts. The Securities Act of 1933 extended to the purchaser two years from the date of discovery of the fraud, but in no event more than 10 years after the sale. 48 Stat. 894 (1933). When Congress enacted the Securities Exchange Act of 1934, it amended the 1933 limitations statute (§ 13, 15 U.S.C. § 77m) and specified a new statute of limitations for each of the express rights of action it created. *See* § 9(e), 15 U.S.C. § 78i(e) (manipulation of security prices); § 16(b), 15 U.S.C. § 78p(b) (profits from purchase and sale of securities within six months); § 18(c), 15 U.S.C. § 78r(c) (liability for misleading statements in any application, report, or filed document). In 1938, Congress added a statute of limitations for section 29(b) of the 1934 Act, 15 U.S.C. § 78cc(b) (validity of contract provisions in violation of Act or regulations thereunder).

Congress declared with specificity:

No action shall be maintained to enforce any liability created under section 77k or 77*l*(2) of this title unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence, or, if the action is to enforce a

liability created under section 771(1) of this title, unless brought within one year after the violation upon which it is based. In no event shall any such action be brought to enforce a liability created under section 77k or 77*l*(1) of this title more than three years after the security was bona fide offered to the public, or under section 77*l*(2) of this title more than three years after the sale.

15 U.S.C. § 77m.

No action shall be maintained to enforce any liability [for manipulating security prices] unless brought within one year after the discovery of the facts constituting the violation and within three years after such violation.

15 U.S.C. § 78i(e).

No action shall be maintained to enforce any liability [for misleading statements in any application, report, or filed document] unless brought within one year after the discovery of the facts constituting the cause of action and within three years after such cause of action occurred.

15 U.S.C. § 78r(c).

[No contract shall be deemed void] unless such action is brought within one year after the discovery that such sale or purchase involves such violation and within three years after such violation.

15 U.S.C. § 78cc(b). One exception from the absolute three-year bar is contained in the unlawful profit statute, section 16(b), 15 U.S.C. § 78p(b), which sets two rather than three years as the outside period of repose. We believe that Congress carved out an exception from the 1934 Act's time-year limitation period for section 16(b) because it desired to "prevent[ ] the unfair use of information ... within any period of less than six months" and to require the disgorgement of profits realized from the sale or purchase of securities made within this limited time. Because the brief time period implicated in section 16(b) cases does not necessarily inhere in section 10(b) actions, we believe that the general one-year-after-discovery and three-years-after-the-violation schema is better suited for our consideration; we shall hereinafter refer to it

as the time period that Congress provided in the 1934 Act.

There are reasons for the three-year period of repose in the 1934 Act. In *Norris v. Wirtz*, 818 F.2d 1329, 1332 (7th Cir.), *cert. denied*, —— U.S. ——, 108 S.Ct. 329, 98 L.Ed.2d 356 (1987), the court noted:

The legislative history in 1934 makes it pellucid that Congress included statutes of repose because of fear that lingering liabilities would disrupt normal business and facilitate false claims. It was understood that the three-year rule was to be absolute.

*See Report of the Task Force on Statute of Limitations for Implied Actions*, 41 Bus.Law. 645, 655 (1986); 6 J.S. Ellenberger & E. Mahar, *Legislative History of the Securities Act of 1933 and Securities Exchange Act of 1934* 6565–66, 6718, 6993 (1973), and 7 *id.* at 7743–44. Chief Judge Seitz was of the same mind:

After the plaintiff has notice, there is a strong federal interest in requiring him to file suit quickly. First, an early action will alert other shareholders to possible misconduct in the affairs of the corporation. Second, the shorter period permits the company's management to treat a given securities transaction as closed, allowing them to proceed more confidently with running the company.

*Roberts*, 611 F.2d at 463 (Seitz, C.J., dissenting).

The source of our present problem is obvious. Congress did not expressly create a cause of action for the "manipulative or deceptive device or contrivance" that goes to the heart of section 10(b), 15 U.S.C. § 78j(b), and its nubile offspring, Rule 10b–5:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the

statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b–5 (1987).

Congress cannot be faulted for not providing a statute of limitations, because the section 10(b) private cause of action was not enacted by it; it is a genie sired solely by the judiciary, and the genie having escaped from the bottle is not easily cabined. So the courts resort to the political science fiction of formulating judicially-declared "statutes" of limitations, suggesting that this would have been the intention of Congress had it created an express cause of action. It is a sort of hermaphroditic process: the courts invent the remedy and then seek to determine what would have been the intention of Congress as to a statute of limitations had it expressly created the private damage action. Because Congress takes no action to legislate to the contrary after an implied cause of action has been judicially formulated, we conclude that by *post hoc* inaction, Congress must have intended *ante hoc* that this is what it desired.

Statutes of limitations have been judicially-declared in a plethora of federal actions by borrowing various state and federal limitations periods. These limitations periods generally implement a remedy expressly provided by Congress. Rarely, however, do courts declare a statute of limitations for an implied cause of action that the judiciary, not Congress, has created.

Section 10(b) of the 1934 Act does not by its terms provide an express civil remedy for its violation. Nor does the history of this provision provide any indication that Congress considered the problem of private suits under it at the time of its passage. *See, e.g., Note, Implied Liability Under The Securities Exchange Act,* 61 Harv.L. Rev. 858, 861 (1948); A. Bromberg, *Securities Law: Fraud—SEC Rule 10b–5* § 2.2(300)–(340) (1968); S.Rep. No. 792, 73d Cong., 2d Sess. 5–6 (1934). Similarly, there is no indication that the Commission in adopting Rule 10b–5 considered the question of private civil remedies under this provision. SEC Securities Exchange Act Release No. 3230 (1942); Conference on Codification of the Federal Securities Laws, 22 Bus.Law. 793, 922 (1967); *Birnbaum v. Newport Steel Corp.,* 193 F.2d 461, 463 (2d Cir.), *cert. denied,* 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1952); 3 L. Loss, *Securities Regulation* 1469 n. 87 (2d ed. 1961). It was a district judge of this Circuit, Judge Kirkpatrick, who in 1946 first suggested that there was an implied cause of action under Rule 10b–5. *Kardon v. Nat'l Gypsum Co.,* 69 F.Supp. 512, 513–14 (E.D.Pa.1946).

The Supreme Court did not deal with the subject until 25 years later. The Court confirmed with virtually no discussion the overwhelming consensus of the district courts and courts of appeals that such a cause of action did exist. *Superintendent of Ins. v. Bankers Life & Casualty Co.,* 404 U.S. 6, 13 n. 9, 92 S.Ct. 165, 169 n. 9 (1971); *Affiliated Ute Citizens v. United States,* 406 U.S. 128, 150–54, 92 S.Ct. 1456, 1470–72, 31 L.Ed.2d 741 (1972). Such a conclusion was entirely consistent with the Court's recognition in *J.I. Case Co. v. Borak,* 377 U.S. 426, 432, 84 S.Ct. 1555, 1559, 12 L.Ed.2d 423 (1964), that private enforcement of Commission rules may provide "a necessary supplement to Commission action."

To decide what limitations period we should borrow, it therefore becomes imperative to look to the entire body of federal securities law of which section 10(b) and Rule 10b–5 are a part. The relevant law stems from two landmark statutes: the Securities Act of 1933 and the Securities Exchange Act of 1934. The 1933 Act was described as an Act to "provide full and fair disclosure of the character of securities sold in interstate and foreign commerce and through the mails, and to prevent frauds in the sale thereof, and for other purposes." The Securities Exchange Act of 1934, 48 Stat. 881, as amended, 15 U.S.C. § 78a *et seq.,* was described as an

Act "to provide for the regulation of securities exchanges and of over-the-counter markets operating in interstate and foreign commerce and through the mails, to prevent inequitable and unfair practices on such exchanges and markets, and for other purposes."

The various sections of the 1933 Act dealt at some length with the required contents of registration statements and prospectuses and expressly provided for private civil causes of action. Section 11(a) gave a right of action by reason of a false registration statement to "any person acquiring" the security, and section 12 of that Act gave a right to sue the seller of a security who had engaged in prescribed practices with respect to prospectuses and communication to "the person purchasing such security from him."

The 1934 Act was divided into two titles. Title I was denominated "Regulation of Securities Exchanges," and Title II was denominated "Amendments to Securities Act of 1933." Section 10 of that Act makes it "unlawful for any person ... (b) [t]o use or employ in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [Securities and Exchange] Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C. § 78j(b). In 1942, acting under the authority granted to it by section 10(b) of the 1934 Act, the Commission promulgated Rule 10b–5, 17 C.F.R. § 240.10b–5, previously described by us in detail.

We find it necessary to recite this familiar history because it bears directly on the final controlling issue. We return to the test decreed by the Supreme Court: borrow a state statute of limitations period if you can, but "when the federal policies at stake and the practicalities of litigation make [a federal] rule a significantly more appropriate vehicle for interstitial lawmaking," *DelCostello v. International Bhd. of Teamsters,* 462 U.S. 151, 172, 103 S.Ct.

2281, 2294, 76 L.Ed.2d 476 (1983), we should borrow the federal statute.

We think we find guidance, or at least a strong signal, from the discussion in the latest offering of the Supreme Court in June 1987. In *Malley–Duff,* the Court emphasized that for RICO actions "as with § 1983, a uniform statute of limitations is required to avoid intolerable 'uncertainty and time-consuming litigation' " —— U.S. at ——, 107 S.Ct. at 2764 (quoting *Wilson,* 471 U.S. at 272, 105 S.Ct. at 1945). But when it came to deciding whether to borrow a uniform limitations period from the body of state or federal law, the Court resorted to the process of analogy and found RICO much more comparable to the Clayton Act than to any state statute. If we apply the *Malley–Duff* test of "far closer analogy," we find that section 10(b) of the Securities Exchange Act of 1934 bears "a far closer analogy to [companion provisions in the 1934 Act] than any state alternative." *Id.*

Both section 10(b) and its companion provisions—§ 9(e) (manipulation of security prices); § 16(b) (profits from purchase and sale of securities within six months); § 18(c) (liability for misleading statements in any application, report, or filed document); and § 29(b) (validity of contract provisions in violation of Act or regulations thereunder)—are aimed at the same objectives. All of these companion provisions, except section 16(b), have a uniform federal limitations period. All reflect, in common with section 10(b), the purpose of the original Securities Act of 1933:

> to "provide full and fair disclosure of the character of securities sold in interstate and foreign commerce and through the mails, and to prevent frauds in the sale thereof, and for other purposes."

*Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 728, 95 S.Ct. 1917, 1921, 44 L.Ed.2d 539 (1975) (quoting 1933 Act); *see Basic Inc. v. Levinson,* —— U.S. ——, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988). All aim to compensate the same type of injury. All are designed to fill a void in the common law and to create remedies that would be uniform throughout our nation's commer-

cial universe, instead of being subjected to the vagaries of independent and diverse state statutory regulations.

Authorized by the interstate commerce clause and responding to the need for national uniformity (an absolute component of our national economy), the remedies under the Securities Acts are made uniform by federal law in all 50 states. What Justice Story stated with great eloquence, in another era in another context, seems especially appropriate here:

> the law respecting [securities] may be truly declared in the languages of Cicero, adopted by Lord Mansfield in *Luke v. Lyde*, 2 Burr. 883, 887, to be in a great measure, not the law of a single country only, but of the commercial world. *Non erit alia lex Romae, alia Athenis; alia nunc, alia posthac; sed et apud omnes gentes, et omni tempore una eademque lex obtinebit.*

*Swift v. Tyson*, 41 U.S. (16 Pet.) 1, 19, 10 L.Ed. 865, 871 (1842).

The necessity for uniform federal remedies in security cases would seem to demand recourse to a uniform federal statute of limitations. A broker in New York, an issuer in Delaware, a purchaser in San Francisco, an accountant in New Jersey, and a lawyer in Pennsylvania should be subject to the same statute of limitations for actions based on section 10(b) or Rule 10b–5. Again with a nod to Cicero, you simply should not have a different Securities Act limitations period for Rome, New York, and Athens, Georgia (*Non erit alia lex Romae, alia Athenis*). And since uniformity is not to be found in the diverse body of state tort limitations, we are impelled inexorably to look to federal limitations for borrowing purposes.

Moreover, the same problem inheres in the plethora of state blue sky laws, which have widely varying statutes of limitations as well as disparate statutory coverage. For example, Delaware limits actions to "2 years after the contract of sale." Del.Code Ann. tit. 6, § 7323(e). New Jersey allows actions no more than "two years after the contract of sale, or within two years of the time when the person aggrieved knew or should have known of the existence of his cause of action, whichever is later." N.J.S.A. § 49:3–71(e). Pennsylvania allows suit within four years after the alleged violation, or within one year after the plaintiff discovers or should have known the facts constituting the violation, "whichever shall first expire." 70 Pa.Cons.Stat. § 1–504(a). *See also Suslick v. Rothschild Securities Corp.*, 741 F.2d 1000 (7th Cir.1984) (applying Illinois' three-year blue sky statute); *Buder v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 644 F.2d 690 (8th Cir.1981) (applying Missouri's two-year blue sky period); *O'Hara v. Kovens*, 625 F.2d 15 (4th Cir.1980) (applying Maryland's one-year blue sky statute), *cert. denied*, 449 U.S. 1124, 101 S.Ct. 939, 67 L.Ed.2d 109 (1981).

It is difficult to consider a limitations statute that better reflects the "federal policies at stake" and the "practicalities of litigation" in a case based on the Securities Exchange Act of 1934 than those provisions of the Act that explicitly and expressly state such a period. Fidelity to the strong federal policies announced in *Norris v. Wirtz*, 818 F.2d 1329, 1332 (7th Cir.), *cert. denied*, —— U.S. ——, 108 S.Ct. 329, 98 L.Ed.2d 356 (1987), and *Roberts*, 611 F.2d at 463 (Seitz, C.J., dissenting), would strongly counsel that we adopt the 1934 Act limitations period. Indeed, because the Supreme Court opened the door to borrowing relevant federal limitations statutes, and in light of the congressional philosophy and purposes set forth in the 1933 and 1934 Acts that have been so consistently emphasized and implemented by the federal courts, it would seem bizarre if not anomalous to go beyond the express statutes of limitations contained in provisions of the 1934 Act.

## VIII.

We now recount the route we have travelled. We have concluded that because of *DelCostello, Wilson,* and *Malley–Duff,* and because we are a court in banc, we are free to re-examine the reasoning and holdings of *Roberts* and *Biggans.* We recognize that the Supreme Court has rejected the

claim-by-claim analysis that underlies our previous decisions:

> Although it has been suggested that federal courts always should apply the state statute of limitations most analogous to each individual case whenever a federal statute is silent on the proper limitations period ... a clear majority of the Court rejected such a single path.

*Agency Holding Corp v. Malley–Duff & Assocs., Inc.,* — U.S. —, —, 107 S.Ct. 2759, 2762, 97 L.Ed.2d 121 (1987). At least in the context of RICO, our court favors "the *one* most appropriate statute of limitations for *all* civil ... claims," *Malley–Duff & Assocs., Inc. v. Crown Life Ins. Co.,* 792 F.2d 341, 349 (3d Cir.1986), *aff'd sub nom. Agency Holding Corp. v. Malley–Duff & Assocs., Inc., supra,* and we have rejected an "ad hoc approach" because it "would create 'uncertainty and time-consuming litigation.'" *A.J. Cunningham Packing Corp. v. Congress Fin. Corp.,* 792 F.2d 330, 337 (3d Cir.1986) (Sloviter, J., concurring) (quoting *Wilson,* 471 U.S. at 272, 105 S.Ct. at 1945). We have also shown that section 10(b) actions cover the national scene in terms of multiple variations of conduct—the broker in the Northeast, the issuer in the Mid–Atlantic, the purchaser on the West Coast, the accountant and the lawyer elsewhere—and we think that, as in section 1983 and RICO cases, "any analogies to traditional state causes of action 'are bound to be imperfect.'" *Crown Life,* 792 F.2d at 348 (quoting *Wilson,* 471 U.S. at 272, 105 S.Ct. at 1945).

Finally, notwithstanding the 1979 concerns of Judge Gibbons and Chief Judge Seitz in *Roberts* that we could not "borrow" federal statutes because "an inferior federal court is not free to change" the practice, 611 F.2d at 454, and that the Supreme Court "has rarely deviated from the normal rule of looking to state [rather than federal] statutes," *id.* at 463, the Supreme Court in *DelCostello* and *Malley–Duff* has changed all that. We believe that this is just that kind of case where "a rule from elsewhere in federal law provides a closer analogy than available state statutes," *DelCostello,* 462 U.S. at 172, 103 S.Ct. at 2294, and that the rule of repose

found in companion sections of the 1934 Act furnishes the best analogy. *See Malley–Duff,* — U.S. at —, 107 S.Ct. at 2762.

We have decided therefore that the express limitations sections of the Securities Exchange Act of 1934 provide the preferable source of limitations borrowing here. As Professor Loss puts it:

> This reference to state law makes for a great amount of utterly wasteful litigation.... Would it not be eminently more consistent with the overall statutory scheme to look to what Congress itself did when it was thinking specifically of private actions in securities cases rather than to a grab-bag of more or less analogous state statutes?

L. Loss, *Fundamentals of Securities Regulation* 1168–69 (1983). When Congress has created a right to sue in securities matters, it has, with one exception, declared a limitations period no longer than three years. *See* 15 U.S.C. § 77m; 15 U.S.C. § 78i(e); 15 U.S.C. § 78r(c); 15 U.S.C. § 78cc(b).

Accordingly, we have decided that the proper period of limitations for a complaint charging violation of section 10(b) and Rule 10b–5 is one year after the plaintiff discovers the facts constituting the violation, and in no event more than three years after such violation.

## IX.

The foregoing analysis supplies the answers to the questions certified for decision. Under 28 U.S.C. § 1292(b), "our jurisdiction extends only to orders of the district court." *Link v. Mercedes Benz of N. Am., Inc.,* 550 F.2d 860, 863 (3d Cir.) (in banc), *cert. denied,* 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977). In certifying the questions for our consideration, the district court did not request that we address the issue of whether our rulings should have prospective effect only and not apply to the present case. "We have refused to reach an issue posed by an order appealed under section 1292(b) where that issue was not addressed by the district court ... or

where the issue involved factual determinations better left to the district court." *Miller v. Bolger*, 802 F.2d 660, 666–67 (3d Cir.1986) (citations omitted). Accordingly, we do not meet the prospectivity issue here.

For reasons other than those stated by the district court, we have declined to borrow the two-year statute of limitations from New Jersey's blue sky law. Moreover, we have decided that the district court's decision to borrow the six-year limitations period for fraud will be reversed. The cause will be remanded with a direction that the court proceed in accordance with this opinion.

SEITZ, Circuit Judge, with whom Judges SLOVITER and MANSMANN join, dissenting.

Accepting the correctness of the new rule of law adopted today that a federal statute of limitations controls here, I dissent because I believe the majority commits egregious error in not addressing and resolving plaintiffs' argument that if a new limitations rule is adopted, it should not be applied to this case.

Initially, there is a special irony in the majority's implied criticism of the dissent for reaching the retroactivity issue when it was not a certified question. The majority itself, in establishing a federal statute of limitations rule, is not answering the formal language of any certified question. The parties have not even documented any basis that would justify the conclusion that a federal limitations rule was proposed to the district court.

Another curious feature of the majority opinion is that it rules on a "decision" of the district court rather than on the order being appealed, even while recognizing that it is the order that forms the jurisdictional basis for our power of review. *Miller v. Bolger*, 802 F.2d 660, 666 (3d Cir.1986) ("our review is of orders and not of isolated legal questions"). As we indicated in *Johnson v. Alldredge*, 488 F.2d 820 (3d Cir.1973), *cert. denied*, 419 U.S. 882, 95 S.Ct. 148, 42 L.Ed.2d 122 (1974), section 1292(b) specifically involves an appeal from an order and we must act on the order. As this court said in *Link v. Mercedes–Benz*, 550 F.2d 860, 863 (3d Cir.), *cert. denied*, 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977), "orders must be in a posture capable of affirmance or reversal" to be appealable under section 1292(b).

Once it is realized that we are obligated to rule on the district court's order denying the motion to dismiss the third amended complaint on statute of limitations grounds, it necessarily follows that we must determine its correctness. This is so even though our court has now adopted a new rule of law in reviewing the order. As Judge Gibbons stated:

An appeal pursuant to § 1292(b), like any other, is taken from the order of the district court, not from its opinion, and the court is "called upon not to answer the question certified but to decide an appeal." *Johnson v. Alldredge, supra*, 488 F.2d at 823. When an order or judgment is before a reviewing court, "[t]he prevailing party may ... assert in the reviewing court any ground in support of his judgment, whether or not that ground was relied upon or even considered by the trial court." *Dandridge v. Williams*, 397 U.S. 471, 475 n. 6 [90 S.Ct. 1153, 1156 n. 6, 25 L.Ed.2d 491] ... (1970); *Mills v. Electric Auto–Lite Co.*, 396 U.S. 375, 381 n. 4 [90 S.Ct. 616, 620 n. 4, 24 L.Ed.2d 593] ... (1970); *see* Note, *Federal Jurisdiction and Procedure—Review of Errors at the Instance of a Non–Appealing Party*, 51 Harv.L. Rev. 1058, 1059–60 (1938).

*Consolidated Express, Inc. v. New York Shipping Ass'n*, 602 F.2d 494, 502 (3d Cir. 1979), *vacated and remanded for further consideration*, 448 U.S. 902, 100 S.Ct. 3040, 65 L.Ed.2d 1131 (1980).[1]

1. The district court's obligation to identify a "controlling question of law as to which there is substantial ground for difference of opinion," pursuant to 28 U.S.C. § 1292(b), *see also* Third Circuit Rule 23, is to be contrasted with state laws which permit "certification" by federal courts to the state's supreme court of questions under state law. *See generally* 1A J. Moore, W. Taggart, A. Vestal & J. Wicker, *Moore's Federal Practice* ¶ 0.203[5] (1985).

Thus, in passing on the correctness of the district court's order we must consider any ground now asserted in support of the order "whether or not that ground was relied upon or even considered by the trial court." *Id.* (quoting *Dandridge v. Williams*, 397 U.S. 471, 475 n. 6, 90 S.Ct. 1153, 1156 n. 6, 25 L.Ed.2d 491 (1970)).[2] Whether to reverse or affirm the district court's order therefore requires a decision whether the controlling rule of law will be applied here. Moreover, not to determine now whether the new rule adopted by the majority is to be applicable to the order in this case is to make a mockery of the very objective of section 1292(b) "that an immediate appeal from the order may materially advance the ultimate termination of the litigation." Indeed, it is commonplace for courts formulating a new or different rule of law to rule on its retroactivity at the same time. *See, e.g., Northern Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982); *cf. Mineo v. Port Authority*, 779 F.2d 939 (3d Cir.1985) (holding that *Garcia v. San Antonio Metropolitan Transit Auth.*, 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985) should not be applied retroactively), *cert. denied*, 478 U.S. 1005, 106 S.Ct. 3297, 92 L.Ed.2d 712 (1986).

I am therefore convinced that the retroactivity issue must be addressed in determining whether the new rule of law should be applied to the district court's order in this case.

I commence my analysis from the established legal principle that this court has the power to apply a rule of law prospectively only. *See Northern Pipeline*, 458 U.S. 50, 102 S.Ct. 2858; *Cohn v. G.D. Searle & Co.*, 784 F.2d 460 (3d Cir.), *cert. denied*, —— U.S. ——, 107 S.Ct. 272, 93 L.Ed.2d 248 (1986). The Supreme Court has set forth a three-part test for determining when a court should not apply a newly announced rule of law retroactively. *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971). The *Chevron* Court stated:

First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, see, *e.g., Hanover Shoe, Inc. v. United Shoe Machinery Corp.*, [392 U.S. 481, 496, 88 S.Ct. 2224, 2233, 20 L.Ed.2d 1231 (1968)], or by deciding an issue of first impression whose resolution was not clearly foreshadowed, see, *e.g., Allen v. State Board of Elections*, [393 U.S. 544, 572, 89 S.Ct. 817, 835, 22 L.Ed.2d 1 (1969)]. Second, it has been stressed that "we must ... weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." *Linkletter v. Walker*, [381 U.S. 618, 629, 85 S.Ct. 1731, 1737, 14 L.Ed.2d 601 (1965)]. Finally, we have weighed the inequity imposed by retroactive application, for "[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the 'injustice or hardship' by a holding of nonretroactivity." *Cipriano v. City of Houma*, [395 U.S. 701, 706, 89 S.Ct. 1897, 1900, 23 L.Ed.2d 647 (1969)].

*Chevron*, 404 U.S. at 106–07, 92 S.Ct. at 355–56; *see Cohn*, 784 F.2d 460.

Although the *Chevron* Court was determining whether the holding of a previous case should have been applied retroactively, there is no doubt that the *Chevron* principles are equally applicable where a new principle of law is announced in the case *sub judice*. *See, e.g., Northern Pipeline*, 458 U.S. 50, 102 S.Ct. 2858 (applying *Chevron* retroactivity test in case announc-

**2.** The quotation in the majority opinion from *Miller v. Bolger*, 802 F.2d 660 (3d Cir.1986) is inapposite here. In view of the district court's ruling, it had no reason to address retroactivity. Unlike *Miller,* in which this court declined to rule on an issue that required "determinations that should be left to the district court in the first instance," the majority does not identify any issue of material fact here with respect to the retroactivity issue, and I am convinced that there is no such issue. Accordingly, I see no reason to forgo our obligation to resolve the retroactivity question.

ing new principle of law); *Cohn*, 784 F.2d 460; *Ettinger v. Central Penn Nat'l Bank*, 634 F.2d 120 (3d Cir.1980).

The first question to be answered here under *Chevron* is whether the rule of law announced by the majority is a clear break with past precedent on which litigants may have relied. *See Saint Francis College v. Al–Khazraji*, — U.S. —, 107 S.Ct. 2022, 2025–26, 95 L.Ed.2d 582 (1987) (approving Third Circuit's nonretroactive application of its holding overruling "clearly established circuit precedent on which the complaining party was entitled to rely"). This question is answered by examining the precedent in this circuit at the time the third amended complaint was filed against the appealing defendants.[3] At that time, the law of the circuit was: 1) that a court was to determine the appropriate statute of limitations in securities fraud cases by looking to the *state* statute of limitations that best comported with the federal policies underlying Rule 10b–5, and that process began by applying the state's blue sky law, which was regarded as the most logical state law candidate; and 2) that if, however, there was no civil damage remedy under the blue sky law for the claim in question, a court was to apply the state statute of limitations for fraud. *See Biggans v. Bache Halsey Stuart Shields, Inc.*, 638 F.2d 605 (3d Cir. 1980); *Roberts v. Magnetic Metals Co.*, 611 F.2d 450 (3d Cir.1979) (applying New Jersey law). In light of the precedent in this court applying state statutes of limitations to federal securities claims, *see Biggans*, 638 F.2d 605; *Roberts*, 611 F.2d 450, and in view of the fact that none of the Supreme Court cases cited by the majority[4] even considered, much less clearly overruled, Third Circuit precedent dealing with securities fraud, today's action of our court in overruling those cases and adopting a federal statute of limitations clearly overturns past circuit precedent on which these plaintiffs may have relied.

The second *Chevron* question is whether applying the federal statute of limitations to this action would further or retard its operation. Applying this portion of the test, the *Chevron* Court noted that retroactive application of the statute of limitations rule under consideration in that case would have deprived the plaintiff of "any remedy whatsoever on the basis of superseding legal doctrine that was quite unforeseeable." *Chevron*, 404 U.S. at 108, 92 S.Ct. at 356. That reasoning is equally applicable here. Additionally, applying the new rule prospectively only would not significantly further or retard the policies underlying its general applicability.

The third part of the *Chevron* test requires an examination of the equities of the instant case to determine whether the federal statute of limitations should be applied to this action. As the *Chevron* Court noted, "[i]t would ... produce the most 'substantial inequitable results' ... to hold that [plaintiff] 'slept on his rights' at a time when he could not have known the time limitation that the law imposed upon him.... [N]onretroactive application here simply preserves his right to a day in court." *Chevron*, 404 U.S. at 108, 92 S.Ct. at 356; *see also Cohn*, 784 F.2d at 465. The same is true here. The district court's order borrowing the six-year period of limitations will preserve the plaintiffs' opportunity to have a day in court; application of the majority's newly announced rule will foreclose that opportunity.

The foregoing analysis, in my view, mandates that the rule announced today not be applied to this case. Under these circumstances, it is necessary to ascertain the applicable New Jersey statute of limitations. The inquiry under prior precedent is whether the operative allegations of plaintiffs' complaint stated a cognizable claim

---

**3.** I do not intend to imply that the date the complaint is filed would necessarily be the critical date in all cases applying the *Chevron* principles.

**4.** *Agency Holding Corp. v. Malley–Duff & Assocs., Inc.*, — U.S. —, 107 S.Ct. 2759, 97 L.Ed.2d

121 (1987) (decided after appealing defendants were joined in the instant action); *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985); *DelCostello v. International Bhd. of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed. 2d 476 (1983).

under the blue sky law. The New Jersey blue sky law provides in pertinent part:

(a) *Any person who*

(1) *Offers or sells* a security in violation of sections 8(b), 9(a) or 13 of this act, or

(2) *Offers or sells* a security by means of [specified conduct] *is liable to the person buying the security from him* ...;

(b) Every person who directly or indirectly controls a seller liable under paragraph (a), every partner, officer, or director of such a seller, every person occupying a similar status or performing similar functions, every employee of such a seller who materially aids in the sale, and every broker-dealer or agent who materially aids in the sale are also liable jointly and severally with and to the same extent as the seller, unless the non-seller who is so liable sustains the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist....

....

(h) The rights and remedies provided by this act are in addition to any other rights or remedies that may exist at law or in equity, but this law does not create any cause of action not specified in this section or section 10, paragraph (e).

N.J.Stat.Ann. § 49:3–71 (West 1970) (emphasis added).

The third amended complaint alleged that the appealing defendants, an accountant and his firm and an attorney and his firm, had violated section 10(b) and rule 10b–5 by actively participating in, and aiding and abetting, a conspiracy to defraud plaintiffs. Essentially for the reasons cited by the district court, i.e., the appealing defendants did not sell securities to the plaintiffs and the defendants were outside the scope of liability imposed by the plain language of the blue sky law, I conclude that plaintiffs' complaint did not state a claim under the blue sky law. I believe the New Jersey Supreme Court would construe the statute similarly. It follows, then, that

the district court properly applied the New Jersey six-year statute of limitations for fraud. Accordingly, I would affirm the order of the district court denying the defendants' motion to dismiss.