**William C. HELLER, Jr., Plaintiff,**

**v.**

**ARTHUR D. LITTLE, INC., John F. Magee, Charles R. LaMantia, Harland A. Riker, Jr., Jean E. De Valpine and David B. Stone, Defendants.**

Civ. A. No. 90–11432–H.

United States District Court,
D. Massachusetts.

Nov. 13, 1991.

James G. Schweitzer, Godfrey & Kahn, Milwaukee, Wis., for William C. Heller, Jr.

Peter J. Macdonald, Jeffrey B. Rudman, Victor Koufman, Hale & Dorr, Boston, Mass., Thomas L. Shriner, Jr., Foley &

Lardner, Milwaukee, Wis., for Arthur D. Little, Inc., John F. Magee, Charles R. La-Mantia and Harland A. Riker, Jr.

Peter J. Macdonald, Jeffrey B. Rudman, Victor Koufman, Hale & Dorr, Seth W. Brewster, John T. Montgomery, Harvey J. Wolkoff, Ropes & Gray, Boston, Mass., Thomas L. Shriner, Jr., Milwaukee, Wis., for Jean E. De Valpine and David B. Stone.

## MEMORANDUM AND ORDER

HARRINGTON, District Judge.

The Plaintiff William C. Heller, Jr., was a minority shareholder of Arthur D. Little, Inc. ("ADL"), until June, 1988. The Defendant ADL is a Massachusetts corporation engaged in international technology and management consulting services. The Defendants John F. Magee, Charles R. La-Mantia and Harland A. Riker, Jr., were, at all pertinent times, officers of ADL. The Memorial Drive Trust ("MDT") was and is a Massachusetts trust which holds the assets of a tax-exempt retirement plan for the benefit of officers and employees of ADL. The Defendant Jean E. De Valpine was the Administrator, Chief Executive Officer and Secretary–Treasurer of the MDT. David B. Stone was a Trustee of the MDT and, at times, Chairman of the Board of Trustees of the MDT.

The plaintiff initially filed this action on January 11, 1990. Counts I through VI of the first Complaint allege that the defendants violated Section 10(b) and Rule 10b–5 of the Securities Exchange Act; 15 U.S.C. § 78j(b), 17 C.F.R. § 240.10b–5. Specifically, Counts I through IV allege securities fraud on behalf of the defendants with respect to the sale by the plaintiff of 5,000 shares of stock on February 29, March 2, March 11 and March 16, 1988. Counts V and VI of the original Complaint assert claims for fraudulent statements or omissions of material fact from ADL's proxy statement issued on May 11, 1988.

The plaintiff filed a Second Amended Complaint on August 3, 1990 which mod-

ified to some extent the allegations contained in Counts I through VI and asserted an additional fraud claim, Count X, based on information learned by the plaintiffs in May, 1990.[1] Count X alleges further violations of Section 10(b) and Rule 10b–5 of the Securities Exchange Act.

In June, 1991, the United States Supreme Court announced in *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* — U.S. ——, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991), a one-year statute of limitations applicable to actions under Section 10(b) of the Securities Exchange Act. Thereafter, the defendants in the instant case moved to dismiss Counts I through VI and X of the plaintiff's Second Amended Complaint, alleging that they were time barred. This Court denied the defendants' motion on September 16, 1991. Since that time, the defendants have deposed the plaintiff with respect to the issue of the statute of limitations and have asked the Court to reconsider the defendants' motion for a partial dismissal or, in the alternative, to certify its Order for interlocutory appeal pursuant to 28 U.S.C. § 1291(b). As the defendants have submitted deposition testimony for the Court's consideration, the Court treats the instant motion as one for summary judgment. *See* Fed.R.Civ.P. 12.

The parties agree that a one-year statute of limitations applies retroactively to the instant action; they disagree about when that one-year period began to run. The defendants contend that the period began when the plaintiff was put on "inquiry notice" about the defendants' alleged violations. *See Kennedy v. Josephthal Co., Inc.,* 814 F.2d 798, 802 (1st Cir.1987). The defendants assert that the plaintiff discovered the securities fraud alleged in Counts I through IV by March, 1988, the securities fraud alleged in Counts V and VI by May, 1988 and the securities fraud alleged in Count X by June, 1988. The defendants argue that the plaintiff's securities claims are time barred because they were not brought until January, 1990 which was

---

1. The plaintiff filed the Second Amended Complaint and substituted it for the First Amended Complaint which was the subject of a motion to

file pending at the time the case was transferred to the District of Massachusetts on June 1, 1990.

**4**

eighteen to twenty-one months after the plaintiff learned of the claims.

The plaintiff contends that "the law suit is timely as it was commenced within one year 'after the discovery of the facts constituting the violation.'" P. 3, *Plaintiff's Opposition to Defendants' Joint Motion for Reconsideration,* quoting *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* 111 S.Ct. at 2782. The plaintiff asserts that he did not discover the extent of the defendants' fraud scheme until May, 1990 when he received from the defendants internal corporate documents pursuant to a discovery request and confidentiality order. Upon learning such new information, the plaintiff decided to modify Counts I through VI and add Count X, which alleged affirmative misrepresentations, as opposed to omissions, on the part of the defendants.

The Court agrees with the plaintiff that the "[l]itigation instituted pursuant to Section 10(b) and Rule 10b–5 ... must be commenced within one year after the discovery of the facts constituting the violation and within three years after such violation." *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* 111 S.Ct. at 2782.

In the instant case, the original Complaint and the deposition testimony of the plaintiff establish that the plaintiff discovered the facts constituting the violations alleged in Counts I through VI by May, 1988. The original Complaint, which was filed in January, 1990 before the plaintiff received the discovery in June, 1990, set forth fraud claims I through VI. While the plaintiff modified such counts after receiving the discovery documents, the amended counts assert essentially the same claims.

In Counts I through IV, the plaintiff alleges that the defendants failed to disclose to minority shareholders material information prior to the issuance of ADL's press release in March, 1988, concerning merger discussions and restructuring of the stock ownership. Due to the defendants' failure to disclose such information, the plaintiff was unaware of the proposed merger when he sold his shares on February 29, March 2, March 11 and March 16, 1988. The plaintiff sold a total of 5,000 shares on those dates.

The plaintiff testified at his deposition that he had learned from the press release issued in March, 1988 that ADL intended to force out its public shareholders, and he believed at that time that he had been defrauded. The proxy statement issued by ADL in May, 1988 confirmed this belief. It "was established in [the plaintiff's] mind" that he had been defrauded in the amount of $25.00 per share for the shares sold in February and March, 1988. P. 27, Deposition of William C. Heller.

Counts V and VI allege that the defendants issued a proxy statement on May 11, 1988 in an effort to persuade minority shareholders to vote in favor of a proposed merger. Counts V and VI further allege that the proxy statement was fraudulent, deceptive and misleading in that it mischaracterized the role of the MDT. Specifically, the Complaint alleges that the proxy statement indicated that "the ADL Board of Directors was not in a position to give extensive consideration to the liquidation value of ADL in assessing a fair price for the minority shares because 'MDT, which controls the company, does not intend to liquidate the company.'" ¶ 79 in both the first Complaint and the Second Amended Complaint. The plaintiff contends that the proxy statement was misleading in that ADL controlled the MDT, and the ADL Board of Directors could terminate the MDT under certain conditions. The proxy statement also failed to disclose the basis and reasons for a report in July, 1987 which concluded that a $50 per share offer for ADL stock by another company was inadequate. The proxy statement also failed to disclose the basis and reasons for the MDT's internal report which valued ADL stock at $91 to $99 per share.

Counts V and VI further allege that the proxy statement failed to disclose to the plaintiff that ADL was concealing information about the restructuring of ADL stock ownership and that it had previously disclosed such information to its majority shareholder, the MDT. The plaintiff argues that as a result of such omissions the

defendant was forced to liquidate and sell his ADL stock at an inadequate price.

The plaintiff testified at his deposition that the proxy statement made "it real clear to [the plaintiff] that this was a very serious omission, that here the inside shareholders, MDT, people of that nature, knew what was going on, and the outside shareholders were being taken advantage of." P. 18, Deposition of William C. Heller. The plaintiff further testified that after reading the proxy statement he realized that it did not provide information about the valuation of stock, and he believed at that time that he had been defrauded. Thus, the plaintiff knew about the omissions in the proxy statement in May, 1988 when he read the statement.

The plaintiff's deposition testimony establishes that the plaintiff discovered the facts constituting Counts I through VI, at the latest, by May, 1988 which was more than one year before the plaintiff brought suit. Accordingly, the fraud claims contained in Counts I through VI are time barred and summary judgment is granted with respect to those counts.

It is not clear from the record whether the plaintiff learned about the facts constituting Count X prior to receiving the defendants' internal documents in May, 1990. Since the facts pertaining to the plaintiff's knowledge are contested, summary judgment is denied as to Count X.