**WESTINGHOUSE ELECTRIC CORPORATION, derivatively by Joseph H. LEVIT; George M.D. Richards, individually and on behalf of all others similarly situated, Plaintiffs,**

v.

**B.H. FRANKLIN; John C. Marous; R.M. Morrow; Hays T. Watkins; Donald F. Hornig; John B. Carter; Robert W. Campbell; R.C. McPherson; R.R. Pivirotto; D.T. McLaughlin; P.E. Lego; William A. Powe, Defendants,**

and

**Westinghouse Electric Corporation, Nominal Defendant.**

Civ. A. No. 88–5260.

United States District Court, D. New Jersey.

April 21, 1992.

---

Richard D. Greenfield, Mark C. Rifkin, Greenfield & Chimicles, Haverford, Pa., Arnold Levin, Levin Fishbein Sedran & Berman, Phyllis C. Kaufman, Philadelphia, Pa., for plaintiffs.

Ira M. Millstein, Greg A. Danilow, Weil, Gotshal & Manges, New York City, for defendants.

Raymond M. Tierney Jr., William D. Sanders, Shanley & Fisher, Morristown, N.J., for defendants and nominal defendant Westinghouse Elec. Corp.

David Boies, Richard W. Clary, Cravath, Swaine & Moore, New York City, for nominal defendant Westinghouse Elec. Corp.

## OPINION

BROTMAN, District Judge.

Presently before the court is the motion on behalf of all defendants to dismiss Count I of the complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and to dismiss Counts II and III of the complaint for failure to make an adequate pre-suit demand or to adequately allege with particularity why demand should be excused as required by Rule 23.1 of the Federal Rules of Civil Procedure and applicable state law.

## I. FACTS AND PROCEDURE

Plaintiffs Joseph H. Levit and George M.D. Richards bring this federal securities law derivative suit and class action against eleven directors and senior officers of Westinghouse Electric Corporation ("Westinghouse") and seek legal and equitable relief. The complaint in this action was originally filed on December 2, 1988.[1] Count I of the complaint alleges violations of Section 14(a) of the Securities Exchange Act of 1934 (15 U.S.C. § 78n(a)) and Rule 14a–9 (17 C.F.R. § 240.14a–9) promulgated by the Securities and Exchange Commission thereunder, and Section 20 of the Se-

---

**1.** The original complaint was filed by George M.D. Richards and Sarah Shields as a derivative suit. Currently before the court is the seconded amended complaint which was filed on May 2, 1991 with Richards and Levit as plaintiffs.

curities Exchange Act of 1934 (15 U.S.C. § 78t). Plaintiffs claim that defendants disseminated false and misleading Proxy Statements to shareholders in 1987 and thereafter [2]. They contend that defendants omitted material information about Westinghouse's alleged criminal activity in the construction of a nuclear power plant in the Philippines. Complaint at ¶ 39(D).[3] Moreover, plaintiffs allege that the Proxy Statements failed to disclose: 1) that Richards' counsel, Arnold Levin and Levit's counsel, Richard Greenfield, made demands upon Westinghouse's Board of Directors requesting that legal action be commenced against certain of the defendants and others arising out of the conduct in the Philippine matter, Complaint at ¶ 39(A) [4]; and 2) that Westinghouse made substantial expenditures for costs involved in being the principal lobbyist for the Pennsylvania "Directors Liability Act," effective January 27, 1987, which was procured to protect defendants from liability for the wrongdoing alleged in the Philippine matter, Complaint at ¶ 39(C).

The information allegedly omitted in the Proxy Statements concerned the defendants "inability to manage and incompetence in operating and/or overseeing the business of the Company, including their handling of the Philippine fiasco and that the proxy materials were intended to deceive plaintiffs and other shareholders of the company ... into voting as requested by management." Complaint at ¶ 39. As a result, the defendants solicited votes of its shareholders for approving the re-election of directors and amending its Articles of Incorporation and Bylaws relating to indemnification and director liability ("Raincoat Provisions") which was contrary to the best interest of the shareholders and Westinghouse. Plaintiffs state that defendants "[t]hus having been re-elected, they continued their mismanagement of the Company, causing further damage to the Company.... Further the Raincoat Provisions

**2.** The original complaint of December 2, 1988 alleges omissions in Westinghouse's 1987 Proxy Statement. Westinghouse mailed its 1987 Proxy Statement in March of 1987. The second amended complaint filed on May 2, 1991 alleges omissions in Westinghouse's Proxy Statements for the years 1987 and thereafter.

**3.** On various occasions from 1973 until 1986, Westinghouse allegedly paid over $17 million in bribes to a Mr. Disini, a confidant of then-President Ferdinand Marcos to secure the nuclear power plant contract and then constructed the plant defectively, rendering it unusable to this day and potentially exposing Westinghouse to millions of dollars in civil and criminal liability. In *Republic of the Philippines v. Westinghouse Electric Corp.*, C.A. No. 88–5150, before the Honorable Judge Debevoise, the Philippines sought to recover damages for the alleged bribe. On December 19, 1991, an international Arbitrational Tribunal held that the Philippines failed to prove by "clear and convincing evidence" that the contract was obtained through bribery. *Mealey's International Arbitration Report*, Volume 7, Issue 1 (Jan. 1992) at pages B–1 through B–69. Judge Debevoise refused to give collateral estoppel effect to the Arbitrational Tribunal's holding because of the different standard of proof, "preponderance of the evidence," applicable in federal court. *Republic of the Philippines v. Westinghouse Electric Corp.*, 782 F.Supp. 972 (D.N.J.1992). The *Republic of Philippines* case has recently been settled.

**4.** The April 8, 1986 letter from Arnold Levin, Esquire to the Board of Directors of Westinghouse states:

Further, I hereby demand that the Corporation take prompt legal action against all those persons who have been responsible for making and/or illegally disguising at least $17 million in "legal payments" made by Westinghouse and/or its subsidiaries to cronies of former President Ferdinand E. Marcos, in connection with construction of a nuclear power plant in the Philippines. Aside from being an illegal act and waste of corporate assets, such payments have subjected Westinghouse to a grand jury investigation as well as possible claims by the Government of the Philippines for recovery of such payments.... Unless Westinghouse takes prompt legal action to recover its damages, we are prepared to institute litigation derivatively on behalf of the Corporation.

By letter to the Board of Directors dated May 13, 1987, Richard Greenfield, Esquire stated:

I understand that the company has taken absolutely no action in response to the demands set forth in Mr. Levin's letter of April 8, 1986. In addition, I understand that there is a grand jury investigating the incident involving the nuclear power plant in the Philippines.... Unless I hear from you or your duly authorized representative within thirty (30) days to the effect that the demanded litigation will be commenced by Westinghouse, please be advised that our client has authorized us to proceed in the company's behalf.

were enacted under false pretenses at the 1987 Annual Meeting." Complaint at ¶ 40.

Plaintiffs also allege pendent state law claims of breach of fiduciary duty in Counts II and III of the complaint.

## II. DISCUSSION

*Motion to Dismiss*

 The court may dismiss a case pursuant to Rule 12(b)(6) if it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle him to relief. *Markowitz v. Northeast Land Co.*, 906 F.2d 100, 103 (3d Cir. 1990). The plaintiff is afforded the safeguard of having all its allegations taken as true and all inferences favorable to plaintiff will be drawn. *Boyle v. Governor's Veterans Outreach & Assistance Center*, 925 F.2d 71, 74 (3d Cir.1991).

### 1) Statute of Limitations

Defendants argue that because of the Supreme Court decisions at the end of last term in *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, — U.S. ——, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991) and in *James B. Beam Distilling Co. v. Georgia*, — U.S. ——, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991)[5], the plaintiffs' federal securities claims are time barred and the complaint should be dismissed.[6]

In *Lampf,* the Supreme Court held that where:

the claim asserted is one implied under a statute that also contains an express cause of action with its own time limitation, a court should look first to the statute of origin to ascertain the proper limitations period. We can imagine no clearer indication of how Congress would have balanced the policy considerations implicit in any limitations provision than the balance struck by the same Congress in limiting similar and related provisions. [citations omitted] When the statute of origin contains comparable express remedial provisions, the inquiry usually should be at an end. Only where no analogous counterpart is available should a court then proceed to apply state-borrowing principles.

*Lampf,* 111 S.Ct. at 2780. The court went on to find that litigation instituted pursuant to Section 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. § 78j) and Rule 10b–5 (17 C.F.R. § 240.10b–5), promulgated by the Securities and Exchange Commission thereunder, must be commenced within one year after the discovery of the facts constituting the violation and within three years after such violation, *see* Section 9(e) of the Securities Exchange Act of 1934 (15 U.S.C. § 78i)[7], since the claims asserted are implied under a statute which also contains similar express causes of action with their own time limitations. *Id.* 111 S.Ct. at 2780–2782.

 Neither the Supreme Court nor any other court has ruled on the applicability of *Lampf* to Section 14(a) of the Securities Exchange Act of 1934 and Rule 14a–9.[8]

---

**5.** These decisions were announced on June 20, 1991. This court previously heard oral argument on defendants' motion to dismiss on May 24, 1991. As a result, defendants did not have this statute of limitations argument at the time they originally argued the case before the court.

**6.** Since Counts II and III of the complaint are pendent state law claims, the defendants argue that they must also be dismissed. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

**7.** Section 9(e) of the Securities Exchange Act of 1934 states in relevant part that "no action shall be maintained to enforce any liability created under this section, unless brought within one year after the discovery facts constituting the violation and within three years after such violation."

**8.** However, in *Ceres Partners v. Gel Associates*, 918 F.2d 349 (2d Cir.1990), the Second Circuit stated:

The district court in New Jersey would be bound to follow the ruling of the Third Circuit in [*In re Data Access Systems Securities Litigation*, 843 F.2d 1537, 1550 (3d Cir.1988)] that [Section] 10(b) claims must be brought within one year of discovery and not more than three years after accrual. The district court in the present case noted, and we agree, that ordinarily the same period of limitations governs actions under [Section] 10(b) and [Section] 14, and that there is no reason to believe the Third Circuit would conclude that a different period governs the latter claims.

Applying the analysis set out by the Supreme Court in *Lampf*, the court holds that Section 14(a) and Rule 14a–9 claims must be commenced within one year after discovery of the facts constituting the violation and within three years after such violation.

In *J.I. Case Co. v. Borak*, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423, the Supreme Court held that Section 14(a) provides an implied private right of action. Section 18 of the Securities Exchange Act of 1934 (15 U.S.C. § 78r(c)) relating to misleading statements in applications, reports and filings is similar to Section 14(a) in that it protects individuals from misleading statements. Although Section 14(a) primarily protects current investors from being misled by way of proxy materials [9] and Section 18 protects current and potential investors from being misled by way of applications, reports and filings,[10] both sections are aimed at protecting investors, whether they are current shareholders or individuals contemplating whether to become shareholders, from misleading statements by those who control a corporation. As such, the *Lampf* decision dictates that since Section 18 provides an express private right of action with a statute of limitations, the same statute of limitations should apply for Section 14(a) and Rule 14a–9.

Section 18(c) provides that "[n]o action shall be maintained to enforce any liability created under this section unless brought within one year of discovery of the facts constituting the cause of action and within three years after such cause of action accrued." Thus, the one year/three year limitation applicable to Section 10(b) and Rule 10b–5 according to *Lampf* also applies to Section 14(a) and Rule 14a–9 claims.[11]

The plaintiffs were aware of the underlying matters in the Philippines as of April 8, 1986 as evidenced by the demand letter sent by Levin at that time [12] and they

---

9. Section 14(a) states:

 It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security....

 Rule 14a–9 provides in part that:

 No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

10. Section 18(a) provides in relevant part:

 Any person who shall make or cause to be made any statement in any application, report or document filed pursuant to this title or any rule or regulation thereunder, or any undertaking contained in a registration statement ... which statement was at the time and in the light of the circumstances under which it was made false or misleading with respect to any material fact, shall be liable to any person (not knowing that such statement was false or misleading) who, in reliance upon such statement, shall have purchased or sold a security at a price which was affected by such statement, for damages caused by such reliance....

11. Plaintiffs have also brought a claim pursuant to Section 20 of the Securities Exchange Act of 1934 which provides that "every person who directly or indirectly, controls any person liable under any provision of this title or any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person...." The statute of limitations applicable to this claim is the same as that applicable to the Section 14(a) and Rule 14a–9 claim against the "controlled person." *See Cooperativa Ahorro y Credito Aguada v. Kidder, Peabody & Co.*, 777 F.Supp. 153, 161 (D.P.R. 1991); *Zola v. Gordon*, 685 F.Supp. 354 (S.D.N.Y.1988); *see also Condus v. Howard Savings Bank*, 781 F.Supp. 1052, 1059 (D.N.J.1992); *Lewis v. Hermann*, 783 F.Supp. 1131, 1135 (N.D.Ill.1991).

12. Westinghouse responded to Levin's letter on June 23, 1986 by denying any wrongdoing and by stating that no evidence of wrongdoing has ever been produced. Westinghouse's response makes no mention of the statute of limitations nor does it induce plaintiffs to wait until December of 1988 before bringing their suit. Thus, defendants are not estopped from assert-

were aware that the 1987 Proxy Statement failed to mention the Philippine matter in March of 1987 when the statements were mailed.[13] Since the complaint in this case was not filed until December 2, 1988, the action was not brought within one year of discovery of the facts constituting the cause of action. *Accord Anixter v. Home-Stake Production Co.,* 947 F.2d 897, 899 (10th Cir.1991); *Heller v. Arthur D. Little, Inc.,* 778 F.Supp. 2 (D.Mass.1991).[14] Thus, plaintiffs would be barred by the statute of limitations if this court were to apply the new rule of law retrospectively.

■ In *Beam,* decided the same day as *Lampf,* the Supreme Court held that "when the Court has applied a rule of law to litigants in one case it must do so with respect to all others not barred by procedural requirements or res judicata." *Beam* 111 S.Ct. at 2448. The decision in *Beam* is inapplicable to the present case since the court will not apply this new rule of law, as it relates to Section 14(a) and Rule 14a–9, to the litigants in this case because of the inequity imposed by retroactive application. *See American Trucking Associations, Inc. v. Smith,* 496 U.S. 167, 110 S.Ct. 2323, 110 L.Ed.2d 148 (1990); *Saint Francis College v. Al–Khazraji,* 481 U.S. 604, 107 S.Ct. 2022, 95 L.Ed.2d 582 (1987); *Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971). As the Supreme Court stated in *American Trucking:*

> When considering the retroactive application of decisions newly defining statutes of limitations, the Court has focused on the action taken in reliance on the old limitation period—usually, the filing of an action. Where a litigant filed a claim that would have been timely under the

prior limitation period, the Court has held that the new statute of limitation would not bar his suit.

*American Trucking* 110 S.Ct. at 2339.

In *Roberts v. Magnetic Metals Co.,* 611 F.2d 450 (3d Cir.1979), the Third Circuit applied the New Jersey six-year statute of limitations governing actions for common-law fraud, N.J.S.A. 2A:14–1, to a Section 14(a) claim. *Accord Biggans v. Bache Halsey Stuart Shields,* 638 F.2d 605, 610 (3d Cir.1980). Since plaintiffs filed their cause of action within six years of discovering the misleading Proxy Statement, *see Aykan v. Goldzweig,* 238 N.J.Super. 389, 569 A.2d 905 (Law Div.1989), the new statute of limitation will not bar their suit.

### 2) Section 14(a) Claim

Defendants argue that plaintiffs' complaint alleges conclusory assertions, that Westinghouse's Proxy Statements were misleading by failing to disclose alleged corporate mismanagement and breaches of fiduciary duty, which are insufficient to state a claim under the federal securities law. Moreover, defendants argue that Westinghouse's Proxy Statements were not misleading by failing to disclose that Westinghouse's directors and officers were the principal lobbyists for the Pennsylvania "Directors Liability Act" since the Act, by its terms cannot be applied to any alleged "breach of performance" occurring prior to January 27, 1987. Finally, defendants contend that Westinghouse's Proxy Statements did not have to include the 1986 or 1987 demands by plaintiffs' attorneys to take action against certain unnamed individuals in connection with the nuclear power plant in the Philippines since such allegations are too vague in that they do not

---

ing the statute of limitations. *Burke v. Gateway Clipper, Inc.,* 441 F.2d 946, 949 (3d Cir.1971); *see Keefe v. Bahama Cruise Line, Inc.,* 867 F.2d 1318, 1324 (11th Cir.1989).

**13.** Levit was also aware of the underlying matters in the Philippines at least as early as May 13, 1987 when Greenfield sent his letter to Westinghouse.

**14.** The same holds true for the alleged omissions in the 1988 and 1989 Proxy Statements

since plaintiffs were aware of the facts constituting these claims more than a year before they were alleged in the amended complaint filed in 1991. These allegations do not relate back to December, 1988 when the original complaint was filed since each alleged omission requires proof of independent facts and constitutes a separate claim. *See In re Crazy Eddie Securities Litigation,* 747 F.Supp. 850, 855 (E.D.N.Y.1990); *Federal Deposit Insurance Corporation v. Chizner,* 110 F.R.D. 114, 118–119 (E.D.N.Y.1986).

charge any specific director with any particularized wrongdoing.

■ In *Craftmatic Securities Litigation v. Kraftsow*, 890 F.2d 628, 639 (3d Cir.1989), the Third Circuit clarified the difficult distinction between a material nondisclosure and the nondisclosure of mere mismanagement. After reviewing the fundamental purpose of the Securities Exchange Act of 1934, "to implement 'a philosophy of full disclosure,'" *Id.* at 638, and recent case law interpreting the Supreme Court's decision in *Sante Fe Industries Inc. v. Green*, 430 U.S. 462, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977) as meaning that the failure to disclose a breach of fiduciary duty is not a misrepresentation actionable under the Securities Exchange Act of 1934, the court concluded:

> The violation of federal law stems from the substantial likelihood that disclosure "would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information" available, not from a determination that an undisclosed act constitutes a breach of fiduciary duty or that a transaction was unfair to investors. *See* [*TSC Industries, Inc. v. Northway Inc.*, 426 U.S. 438, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976)]. Where the incremental value of disclosure is solely to place potential investors on notice that mismanagement is culpable of a breach of faith or incompetence, the failure to disclose does not violate the securities acts.

*Craftmatic* at 639–640; *accord Hoxworth v. Blinder, Robinson & Co., Inc.*, 903 F.2d 186, 200 (3d Cir.1990); *Kas v. Financial General Bankshares, Inc.*, 796 F.2d 508, 513 (D.C.Cir.1986) ("a plaintiff may not 'bootstrap' a claim of breach of fiduciary duty into a federal securities claim by alleging that directors failed to disclose that breach of fiduciary duty"); *In re Meridian Securities Litigation*, 772 F.Supp. 223, 227 (E.D.Pa.1991); *see also Walter v. Holiday Inns, Inc.*, 784 F.Supp. 1159, 1172, 1178 (D.N.J.1992).[15] Allegations of failure

to disclose illegal and deceptive practices will survive a motion to dismiss. *Craftmatic* at 640.

■ Plaintiffs allege that defendants omitted material information about Westinghouse's alleged criminal activity in the construction of a nuclear power plant in the Philippines. Complaint at ¶ 39(D). This subparagraph of plaintiffs' complaint also alleges a failure to disclose illegal and deceptive practices. If this allegation is true, the nondisclosure may have significantly altered the total mix of information available to investors and thus, the court will not dismiss subparagraph 39(D) of the complaint.

■ As a nominal defendant, Westinghouse argues that the court should take judicial notice of the contents of newspapers and magazines and the publicity associated with their publication as they relate to allegations of improper payments to Disini and Marcos. Westinghouse contends that these allegations were first reported in the *New York Times* in 1977 followed by later reports and articles in other newspapers and magazines including the *Washington Post* in 1978 and *Fortune Magazine* in 1986. If the court takes judicial notice of these reports and articles, Westinghouse asserts that the court could then consider the information contained therein as part of the "total mix" in analyzing the legal sufficiency of plaintiffs' material omission claim in subparagraph 39(D) of the complaint.

At this time, the court will not take judicial notice of the contents of these newspaper reports and magazine articles to determine whether the nondisclosure of the alleged bribes was material. As the Supreme Court stated in *TSC Industries:*

> The issue of materiality may be characterized as a mixed question of law and fact, involving as it does the application of a legal standard to a particular set of facts.... The determination requires delicate assessment of the inferences a "reasonable shareholder" would draw

---

**15.** However, the Third Circuit has also held that claims for breach of fiduciary duty under state law and for federal securities fraud are not mutually exclusive. *Healy v. Catalyst Recovery of Pennsylvania,* 616 F.2d 641, 646–647 (3d Cir. 1980).

from a given set of facts and the significance of those inferences to him, and these assessments are peculiarly ones for the trier of fact.

*TSC Industries* 96 S.Ct. at 2132–2133. On a motion to dismiss, the court must draw all inferences favorable to plaintiffs and since it does not appear beyond doubt that the plaintiffs can prove no set of facts demonstrating the materiality of defendants' alleged nondisclosure and since the issue of materiality is best left for the trier of fact, the court is not persuaded by Westinghouse's argument. *See Southmark Prime Plus, L.P. v. Falzone*, 776 F.Supp. 888, 902 (D.Del.1991) (on a motion to dismiss, "the Court can only find the fact immaterial if the omissions or false statements are so unimportant that reasonable minds could not differ about the issue").

■ Plaintiffs also allege that the Proxy Statements failed to disclose that Richards' counsel, Arnold Levin and Levit's counsel, Richard Greenfield, made demands upon Westinghouse's Board of Directors demanding that legal action be commenced against certain of the defendants and others arising out of the conduct in the Philippine matter. Complaint at ¶ 39(A). The nondisclosure of this information may also have significantly altered the total mix of information available to investors. Since this allegation also relates to the failure to disclose certain illegal activity, the court will not dismiss subparagraph 39(A) of the complaint.

■ Finally, plaintiffs allege that the Proxy Statements failed to allege that Westinghouse made substantial expenditures for costs involved in being the principal lobbyist for the Pennsylvania "Directors Liability Act," effective January 27, 1987, which was procured to protect defendants from liability for the wrongdoing alleged in the Philippine matter. Complaint at ¶ 39(C). The Pennsylvania Directors Liability Act does not apply to "any breach of performance by any director or officer of a business corporation occurring prior to" January 27, 1987, 15 Pa.C.S.A. § 1746 note. Since the alleged bribes involving the nuclear power plant in the Philippines occurred prior to January 27, 1987, failure to disclose Westinghouse's lobbying activity would not have shielded the defendants from the wrongdoing alleged in the complaint. Since subparagraph 39(C) of the complaint does not allege a material nondisclosure of information that would have altered the total mix of information available to investors, the court will dismiss this subparagraph of the complaint.

3) Pre–Suit Demand

■ Defendants contend that plaintiffs' demand letters, *see supra* n. 4, are insufficient as a matter of law to comply with the pleading requirements of Rule 23.1 of the Federal Rules of Civil Procedure as it relates to plaintiffs' pendent state law claims for breach of fiduciary duty in Counts II and III of the complaint.

Rule 23.1 of the Federal Rules of Civil Procedure provides in relevant part that "[t]he complaint shall ... allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for the plaintiff's failure to obtain the action or for not making the effort." The purpose of the demand requirement is to give the directors "a fair opportunity to initiate the action" which the shareholders subsequently undertook. *Shlensky v. Dorsey*, 574 F.2d 131, 141 (3d Cir.1978). In *Shlensky*, the Third Circuit concluded that a third-party independent auditor should be dismissed from the action because the demand letters were not sent to the Board of Directors and did not refer to the third-party. The letters only requested action against the "responsible individuals" "for all damages."

The court finds that the demand letters sent by the attorneys for the plaintiffs, Levin and Greenfield, to be sufficient since the complaint alleges with particularity the plaintiffs' efforts to provide the directors a fair opportunity to initiate the action which the shareholders subsequently undertook. Paragraph 48 of the Complaint states:

Notwithstanding the futility of demand on the Company's Board of Directors, demands have been made to institute suit against the Individual Defendants and/or former officers and directors of Westinghouse. Such demands were made by letters from Arnold Levin, Esquire and Richard D. Greenfield, Esquire, plaintiffs' counsel, addressed to the Company's Board of Directors or counsel on April 6, 1986 and thereafter. No action has been taken by Westinghouse's Board of Directors in response to such communications and the demands must be deemed to have been rejected.

Moreover, the demand letters of April 8, 1986 and May 13, 1987 are addressed to Westinghouse's Board of Directors. They both clearly state that if Westinghouse does not initiate an action, that the plaintiffs would sue derivatively. Although both letters never implicate the directors of Westinghouse with the alleged Philippine nuclear power plant scandal,[16] the situation is different from that faced by the court in *Shlensky*. Unlike in *Shlensky*, in the instant action, an independent third-party defendant is not involved. The defendants were reasonably put on notice by the demand letters that they, as directors of the corporation, might be the subject of a suit because of the events in the Philippines.[17]

In addition, the identity of the shareholders making the demand was known by the Board of Directors[18] and sufficient time was given for the Board of Directors to act on the requested demand.[19] *See Smachlo v. Birkelo*, 576 F.Supp. 1439, 1444–1445 (3d Cir.1983); *Recchion, Westinghouse Elec-*

*tric Corp. v. Kirby*, 637 F.Supp. 1309, 1319 (W.D.Pa.1986).

### III. CONCLUSION

For the foregoing reasons, defendants' motion to dismiss Count I of the complaint for failure to state a claim will be granted in part and denied in part, and to dismiss Counts II and III of the complaint for failure to make an adequate pre-suit demand or to adequately allege with particularity why demand should be excused will be denied.

---

**16.** The April 8, 1986 demand letter requested that Westinghouse take legal action against all responsible persons.

**17.** In *Allison On Behalf Of G.M.C. v. General Motors Corp.*, 604 F.Supp. 1106, 1117 (D.Del. 1985), the court held that "[a]t a minimum, a demand must identify the alleged wrongdoers, describe the factual basis of the wrongful acts and the harm caused to the corporation, and request remedial relief." *Accord Rubin v. Posner*, 701 F.Supp. 1041, 1045 (D.Del.1988). Although plaintiffs did not specifically identify the director-defendants in their demand letters as the alleged wrongdoers, the court finds that it

would have been unreasonable to require plaintiffs to specifically request that the Board of Directors bring an action against each one of its members, individually.

**18.** Although Levin's April 8, 1986 letter did not indicate that Richards was his client, by letter dated May 22, 1986, Levin informed Robert Pugliese, Vice President and General Counsel for Westinghouse that Richards was his client on whose behalf the demand letter was written.

**19.** Greenfield's demand letter was sent on May 13, 1987 and this action was commenced on December 2, 1988, almost 18 months later.