993 F.2d 349
 61 USLW 2728, Fed. Sec. L. Rep. P 97,455
 WESTINGHOUSE ELECTRIC CORP., derivatively by Joseph H.
LEVIT; and Abraham Joselow; and George M.D.
Richards, individually and on behalf of
all others similarly situated,
v.
B.H. FRANKLIN; John C. Marous; R.M. Morrow; Hays T.
Watkins; Donald F. Hornig; John B. Carter; Robert W.
Campbell; R.C. McPherson; R.R. Pivirotto; D.T.
McLaughlin; P.E. Lego; William A. Powe; and Westinghouse
Electric Corp., Defendants,
and
Westinghouse Electric Corp., Nominal Defendant,
Barbara Hackman Franklin, John C. Marous, Richard M. Morrow,
Hays T. Watkins, Donald F. Hornig, John B. Carter, Robert W.
Campbell, Rene C. McPherson, Richard R. Pivirotto, David T.
McLaughlin, Paul E. Lego, William A. Powe, and Nominal
Defendant Westinghouse Electric Corporation, Appellants.
 No. 92-5513.
 United States Court of Appeals,
Third Circuit.
 Argued April 6, 1993.
Decided May 19, 1993.
 
 James R. Malone, Jr. (argued), Richard D. Greenfield, Robin Resnick, Haverford, PA, Arnold Levin, Levin, Fishbein, Sedran & Berman, Phyllis C. Kaufman, Law Offices of Phyllis C. Kaufman, Philadelphia, PA, for appellees.
 Ira M. Millstein, Greg A. Danilow (argued), Carole E. Klinger, Weil, Gotshal & Manges, New York City, Richard W. Clary, Cravath, Swaine & Moore, New York City, Raymond M. Tierney, Shanley & Fisher, P.C., Morristown, NJ, for appellants.
 Before: MANSMANN, ALITO and ALDISERT, Circuit Judges.
 OPINION OF THE COURT
 ALDISERT, Circuit Judge.
 
 
 1
 This interlocutory appeal under 28 U.S.C. § 1292(b) requires us to answer the following question: Does the one-year/three-year uniform limitations period for actions brought under Section 10(b) of the Securities Exchange Act of 1934 adopted by this court in In Re Data Access Systems Securities Litigation, 843 F.2d 1537 (3d Cir.), cert. denied sub nom. Vitiello v. Kahlowsky & Co., 488 U.S. 849, 109 S.Ct. 131, 102 L.Ed.2d 103 (1988), apply to a cause of action under Section 14(a) of the Act, 15 U.S.C. § 78n(a), which was filed after this court's Data Access decision?
 
 
 2
 The question compels us to decide if the same limitations period controls both sections of the Securities Exchange Act and, if so, whether our holding in Data Access should be applied retroactively in this case. In addition, we are asked to decide whether the action is now moot under this court's decision in General Electric v. Cathcart, 980 F.2d 927 (3d Cir.1992).
 
 
 3
 The district court ruled that the uniform federal limitations period also governs Section 14(a) actions, but the court declined to apply the limitations period retroactively to this case and instead applied an analogous state statute of limitations. The defendants have appealed. We reach the merits and hold that the uniform federal limitations period applies. The order of the district court will be reversed.
 
 I.
 
 4
 Jurisdiction was proper in the trial court based on Section 27 of the Securities Exchange Act, 15 U.S.C. § 78aa, and precepts of pendent jurisdiction. Pursuant to 28 U.S.C. § 1292(b), the district court certified for interlocutory appellate review the limitations period question. On September 8, 1992, we granted defendants' Petition for Permission to Appeal.
 
 
 5
 For purposes of clarity, we distinguish claims brought under Section 14(a) and those brought under Section 10(b) of the Securities Exchange Act. Section 14(a) prohibits the solicitation of proxies in violation of any rules and regulations promulgated under the Act. 15 U.S.C. § 78n(a). Rule 14a-9, which was promulgated pursuant to Section 14(a), further provides that no proxy statement shall contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9. Section 10(b) prohibits the use of any "manipulative or deceptive device" in connection with the purchase or sale of registered securities. 15 U.S.C. § 78j(b). Rule 10b-5, which was promulgated pursuant to Section 10(b), further provides that it is unlawful "[t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made ... not misleading" in connection with the purchase or sale of any security. 17 C.F.R. § 240.10b-5.
 
 
 6
 Although these statutes do not explicitly authorize private civil suits, the Supreme Court has long recognized the viability of implied causes of action. See Superintendent of Insurance v. Bankers Life & Casualty Co., 404 U.S. 6, 13 n. 9, 92 S.Ct. 165, 169 n. 9, 30 L.Ed.2d 128 (1971) (recognizing an implied private right of action under Section 10(b)); J.I. Case Co. v. Borak, 377 U.S. 426, 431, 84 S.Ct. 1555, 1559, 12 L.Ed.2d 423 (1964) (recognizing an implied private right of action under Section 14(a)).
 
 
 7
 The plaintiffs are Westinghouse shareholders, who brought this federal securities law derivative suit and class action against twelve directors and senior officers ("directors") of Westinghouse Electric Corporation. The original complaint in this action was filed on December 2, 1988 and has since been amended. The second amended complaint alleged violations of Section 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(a), and Rule 14a-9, 17 C.F.R. § 240.14a-9. The shareholders allege that the directors disseminated false and misleading proxy statements to shareholders in 1987 and thereafter.
 
 
 8
 The shareholders contend that the directors omitted material information from corporate proxy statements about Westinghouse's alleged criminal activity in the construction of a nuclear power plant in the Philippines. According to the shareholders, Westinghouse officers made unlawful payments to Philippine operatives in order to obtain a contract to build a power plant in the Philippines and subsequently failed to fulfill their obligations under that contract by substituting cheaper, inferior materials, components and equipment than were specified by the contract terms. These actions allegedly exposed Westinghouse to the threat of substantial losses. The shareholders also claim that Westinghouse proxy statements were materially misleading because they failed to disclose that shareholders' counsel had demanded that Westinghouse's Board of Directors commence legal action against certain officers for their involvement in the Philippine activities, and further, the proxy statements failed to disclose that Westinghouse made substantial expenditures lobbying for the Pennsylvania "Directors Liability Act," which became effective in January of 1987, and protected the directors from liability for any alleged wrongdoing in the Philippines.
 
 
 9
 According to the allegations, the proxy materials were intended to deceive shareholders into voting with management. The Westinghouse board had disseminated the proxy statements in order to solicit shareholder proxies for the re-election of the directors to the Board and to gain approval of Boardrecommended amendments to Westinghouse's articles of incorporation. The shareholders contend that, as a result of misleading proxy statements, the directors successfully solicited votes from shareholders approving their re-election and amending Westinghouse's articles of incorporation and its bylaws to expand director indemnification and to limit director liability, corporate governing maneuvers bearing the prevalent description of "raincoat provisions." It is alleged that the directors' elections and the corporate governance amendments were not in the best interests of the shareholders or the corporation. Plaintiffs further allege that the re-elected directors continued their mismanagement of the company, causing further damages. The shareholders also alleged pendent state law claims that the directors breached fiduciary duties.
 
 
 10
 In their complaint, the shareholders sought to have the district court void the director elections tainted by the misleading proxy statements and rescind the raincoat provisions. In addition, they sought compensatory damages relating to the alleged misrepresentations.
 
 II.
 
 11
 The district court applied the six-year New Jersey statute of limitations governing actions for common law fraud to the shareholders' Section 14(a) claims under the reasoning of this court in Roberts v. Magnetic Metals Co., 611 F.2d 450 (3d Cir.1979). Because the shareholders filed their complaint within six years of discovering the misleading proxy statements, the court concluded that the statute of limitations did not bar the suit. The district court agreed with the directors that the same limitations period governed suits under Section 10(b) and Section 14(a), but the court refused to apply the limitations period prescribed in Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson, --- U.S. ----, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991), because of the "inequity imposed by [its] retroactive application." Westinghouse Elec. Corp. by Levit v. Franklin, 789 F.Supp. 1313, 1319 (D.N.J.1992). The district court also determined that James B. Beam Distilling Co. v. Georgia, --- U.S. ----, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991), was inapplicable to the instant case because the Supreme Court in Lampf had not decided the specific question before this court, to-wit, whether the new limitations period for Section 10(b) claims also governs claims under Section 14(a). 789 F.Supp. at 1319. The district court did not consider the application of Data Access until after the defendants had filed a motion for reconsideration after the district court's initial ruling.
 
 
 12
 "Because this appeal involves the selection, interpretation, and application of legal precepts, the standard of review is plenary." In Re Data Access Systems Securities Litigation, 843 F.2d 1537, 1539 (3d Cir.1988). Although the scope of review is generally governed by the controlling questions of law certified by the district court, this court may consider all grounds that might require reversal of the order from which the parties appeal. Id.
 
 III.
 
 13
 In Lampf, the Court held that claims brought under Section 10(b) of the Securities Exchange Act must be commenced within one year after the discovery of the facts constituting the violation or within three years after such violation. Although this decision marked a fundamental change in statute of limitations jurisprudence in many of the judicial circuits, it did not establish a new precept of law in this circuit. In 1988, eight months before the present suit was filed, this court decided Data Access, in which we announced the precise uniform federal limitations period later adopted by the Supreme Court in Lampf.[1] Because Data Access remains the law of this judicial circuit, we will determine its applicability to the matter before us.
 
 
 14
 Following the reasoning of DelCostello v. International Brotherhood of Teamsters, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), in Data Access we departed from traditional state-borrowing statute of limitations jurisprudence by looking first to analogous federal statutes of limitation when determining the proper limitations period for actions brought under Section 10(b). Data Access adopted not only a uniform limitations period for Section 10(b) claims but it also utilized a new method of determining the proper limitations period for other claims implied under the Securities Exchange Act. Three years later, the Supreme Court adopted our approach, noting that "[w]e can imagine no clearer indication of how Congress would have balanced the policy considerations implicit in any limitations provision than the balance struck by the same Congress in limiting similar and related protections." Lampf, --- U.S. at ----, 111 S.Ct. at 2780.
 
 
 15
 We now decide that the rationale articulated in Data Access, which was accepted by the Supreme Court in Lampf, is equally applicable to Section 14(a) actions, and perforce, commands the same result. When confronted with an implied cause of action such as one under Section 14(a), we look first to the federal statute of origin for direction as to the proper limitations period. We do this to ascertain, wherever relevant and possible, the Congressional intent, or stated otherwise, we seek to divine what Congress would have intended had it promulgated an express cause of action. We discern such an intent. We discern it from the explicit limitations periods provided for "similar and related protections." Lampf, --- U.S. at ----, 111 S.Ct. at 2780.
 
 
 16
 Applying this analysis, we find that Section 14(a) claims, like Section 10(b) claims, are similar and related to explicit causes of action enumerated in the Securities Exchange Act for which Congress did expressly provide a limitations period of "one year after the plaintiff discovers the facts constituting the violation, and in no event more than three years after such violation." Data Access, 843 F.2d at 1550.
 
 
 17
 The Supreme Court teaches that Section 14(a) "stemmed from the congressional belief that '[f]air corporate suffrage is an important right that should attach to every equity security bought on a public exchange,' " and its chief purpose is the "protection of investors." J.I. Case Co. v. Borak, 377 U.S. 426, 431-32, 84 S.Ct. 1555, 1559-60, 12 L.Ed.2d 423 (1964) (quoting H.R.Rep. No. 1383, 73d Cong., 2d Sess. 13 (1934)). As in Section 10(b) claims, this implied cause of action was intended "to protect investors." Significantly, Congress has provided the one-year/three-year statute of limitations in provisions with a similar purpose. See, e.g., Section 18, 15 U.S.C. § 78r (relating to misleading filings); Section 9, 15 U.S.C. § 78i (relating to the willful manipulation of security prices), cited in Data Access, 843 F.2d at 1545. All of these causes of action are designed to protect investors and to ensure their ability to make educated decisions regarding their investments, educated decisions based on accurate and complete information.
 
 
 18
 Consistent with this reasoning, this court and district courts in this judicial circuit have repeatedly recognized the similarities between Section 14(a) and Section 10(b) claims and have applied the same limitations period to both. See Roberts v. Magnetic Metals Co., 611 F.2d 450, 456 (3d Cir.1979) (New Jersey's six-year statute of limitations applicable to common law fraud governs actions under Section 10(b) and 14(a)); see also First Eastern Corp. v. Mainwaring, 1992 WL 332227, No. 92-CV-1176 (E.D.Pa. Nov. 4, 1992) ("For purposes of determining the appropriate limitations period, actions under Section 14(a) are treated identically to actions under Section 10(b)."); Bell Atlantic Corp. v. Bolger, No. 91-CV-3675 (E.D.Pa. Feb. 24, 1992). At least one other court of appeals has followed our lead. See, e.g., Ceres Partners v. GEL Assocs., 918 F.2d 349, 353 (2d Cir.1990) ("The district court in the present case noted, and we agree, that ordinarily the same period of limitations governs actions under [Section] 10(b) and [Section] 14, and that there is no reason to believe the Third Circuit would conclude that a different period governs the latter claims."); Cruden v. Bank of New York, 957 F.2d 961, 967 (2d Cir.1992).
 
 IV.
 
 19
 Although the district court determined that the limitations period for claims under Section 14(a) of the Securities Exchange Act should be the same as that prescribed for Section 10(b) claims under the reasoning of Lampf, it refused to apply this new rule to the present parties because "of the inequity imposed by retroactive application." It was here that the district court erred.
 
 A.
 
 20
 The chronology of events in this case is not disputed, and clearly established precepts of retroactivity control our analysis. Data Access was decided on April 8, 1988, approximately eight months before the plaintiffs filed their complaint on December 2, 1988. Retroactivity, however, is measured by the occurrence of the events giving rise to the litigation and not by the date the lawsuit is filed. See Gruber v. Price Waterhouse, 911 F.2d 960, 965 (3d Cir.1990) ("The basic inquiry ... is what a claimant, or his reasonably prudent attorney, would do in 1984 in light of the law at the time the violation occurred"); see also Al-Khazraji v. Saint Frances College, 784 F.2d 505, 510 (3d Cir.1986) ("When evaluating the state of the prior law, it is necessary to look at the time when the plaintiff's cause of action arose"), aff'd, 481 U.S. 604, 107 S.Ct. 2022, 95 L.Ed.2d 582 (1987). The adjudicative facts relative to the question certified in this case occurred substantially prior to our Data Access decision.
 
 
 21
 The Supreme Court has now taught us that once a court applies a rule of law to the litigants in one case, it must do so with respect to all others not barred by procedural requirements or res judicata, unless countervailing indications are present. James B. Beam Distilling Co. v. Georgia, --- U.S. ----, ----, 111 S.Ct. 2439, 2448, 115 L.Ed.2d 481 (1991). But this general rule many not be applied here, because in Data Access, in which we also determined a question certified under 28 U.S.C. § 1292(b), we explicitly held that "we do not meet the prospectivity issue here." 843 F.2d at 1551.
 
 
 22
 Accordingly, retroactive application of Data Access must be determined under the teachings of Chevron Oil Co. v. Huson, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971).[2]
 
 B.
 
 23
 Under Chevron, three factors must be considered before a decision may be applied purely prospectively. First, the decision must "establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed." Id. at 106, 92 S.Ct. at 355 (citations omitted). Second, the court must weigh the merits in each case by looking to the prior history of the rule, its purpose and effect and whether retroactive application will further its operation. And, third, the court must weigh the inequity imposed by retroactive application so as to avoid injustice or hardship. Id. at 107, 92 S.Ct. at 355.
 
 1.
 
 24
 The first factor counsels in favor of retroactive application in this case. Because the shareholders did not file their complaint until several years after learning of the alleged illegalities underlying the Philippine venture, the district court evidently assumed that they relied on pre-Data Access case law. See Westinghouse Elec. Corp. by Levit v. Franklin, 789 F.Supp. 1313, 1319 (D.N.J.1992). Although Data Access established a new legal precept, it cannot be convincingly argued that the shareholders relied on clear precedent decided prior to Data Access. We have emphasized that prior precedent "must be 'sufficiently clear that a plaintiff could have reasonably relied upon it in delaying suit, a criteria that [is] not met where the law was erratic and inconsistent.' " Hill v. Equitable Trust Co., 851 F.2d 691, 696 (3d Cir.1988) (quoting Fitzgerald v. Larson, 769 F.2d 160, 163 (3d Cir.1985)), cert. denied sub nom. Data Controls North, Inc. v. Equitable Bank Nat'l Ass'n, 488 U.S. 1008, 109 S.Ct. 791, 102 L.Ed.2d 782 (1989).
 
 
 25
 We have concluded that no clear precedent on the applicable New Jersey limitations period for claims implied under the Securities Exchange Act existed at the time Data Access was decided in 1988. 843 F.2d at 1541 ("[O]ur decisions have not provided bright-line guidance to our district courts in all Section 10(b) and Rule 10b-5 cases. The district court judge here said that 'the Third Circuit has not settled the statute of limitations issue.' ").
 
 
 26
 Indeed, the district court from which this appeal arises, reached what it described as the "legal conclusion" that no clear precedent existed on the applicable limitations period for Section 10(b) actions in this court prior to our decision in Data Access. See Panna v. Firstrust Sav. Bank, 749 F.Supp. 1372, 1384 (D.N.J.1990), order vacated in part on reconsideration, 760 F.Supp. 432 (D.N.J.1991) (citing McCarter v. Mitcham, 883 F.2d 196 (3d Cir.1989) and Gatto v. Meridian Medical Assoc., Inc. 882 F.2d 840 (3d Cir.1989), cert. denied, 493 U.S. 1080, 110 S.Ct. 1136, 107 L.Ed.2d 1041 (1990)).[3]
 
 
 27
 The limitations period for Section 14(a) actions was equally unclear prior to Data Access. Roberts, which was the only case in this court to address the limitations question for a Section 14(a) claim, has been expressly determined by this court to be insufficiently clear to be considered reliable precedent. Data Access, 843 F.2d at 1549; see also Gruber, 911 F.2d at 966; Hill, 851 F.2d at 697. Thus, there was no clear past precedent sufficient to warrant justifiable reliance by the shareholders.
 
 
 28
 Even assuming there had been clear precedent, another obstacle stands in the way of a reliance argument. On appeal, the shareholders concede that the Data Access limitations period governs their legal claims. They contend that they did not have actual notice of the wrongdoing in this case until December 1, 1988, when the government of the Philippines filed a civil suit against Westinghouse. Accordingly, they could not have reasonably relied on Roberts, because they were not aware of their own claim until after the reasoning of Roberts had been overruled by Data Access. See Panna, 749 F.Supp. at 1384 ("As long as plaintiffs were ignorant of their causes of action, they could not possibly have relied on any limitations period."); see also Gatto, 882 F.2d at 843. The shareholders' own chronology of events precludes any serious consideration of a reliance argument.
 
 2.
 
 29
 We have found the second Chevron factor relating to the prior history of the rule, its purpose and the effect of retroactive application to be neutral when a party has sought to have Data Access applied retroactively. See Gruber, 911 F.2d at 968; Gatto, 882 F.2d at 843.
 
 3.
 
 30
 The last Chevron factor requires us to balance the equities of applying the rule retroactively. It is here where we disagree with the district court's analysis. Contrary to the district court's view, we do not believe that applying the Data Access limitations period would be inequitable to the shareholders. By their own admissions, the shareholders were not made aware of a possible claim until eight months after Data Access had been decided. In Panna, the district court noted that plaintiffs could not have relied on pre-Data Access case law, "when they were totally ignorant of their claims until March, 1989, almost one year after Data Access laid down the one year/three year rule." 749 F.Supp. at 1385. For our purposes here it is sufficient to paraphrase the Panna court's discussion of Chevron's third factor:
 
 
 31
 Finally, the third criterion of Chevron requires that we examine the inequity to plaintiffs if retroactive application were given to Data Access in this case. As the Third Circuit noted in Gatto, "the third Chevron factor in practice overlaps with that of the first factor, 'in that it would be inequitable to give retrospective application to a shortening of the limitations period that altered established law upon which plaintiff could have reasonably relied.' " 882 F.2d at 844, quoting Fitzgerald v. Larson, 769 F.2d at 164. Once again we are faced with the fact that plaintiffs could not have reasonably relied on either the New Jersey general fraud or blue sky statute in delaying suit when they were totally ignorant of their claims until [December 1, 1988, eight months] after Data Access laid down the one year/three year rule. Therefore, we conclude that no inequity could result on retroactive application of Data Access.
 
 
 32
 749 F.Supp. at 1385. At a minimum Data Access should have put plaintiffs on notice as to the likelihood of a uniform limitations period for other implied causes of actions under the Securities Exchange Act, particularly given the tradition in this judicial circuit of applying the same limitations period to Section 10(b) claims and Section 14(a) claims.
 
 
 33
 Utilizing the Chevron analysis, we are persuaded that the teachings of Data Access should be applied retroactively to plaintiffs' Section 14(a) claims in the district court.
 
 V.
 
 34
 In addition, the shareholders argue that even if the one-year/three-year limitations period is applicable to their case, it does not bar their suit. The shareholders contend that they did not have actual notice that the proxy statements were materially false and misleading until December 1988, when the Philippines suit was filed. Therefore, they argue, the one year limitations period did not begin to run until December 1988, well within a year of this lawsuit. We conclude that our role in deciding the certified question is limited to a declaration of the appropriate limitations period for the Section 14(a) claims. See Data Access, 843 F.2d at 1539. It will be for the district court, and not us, to consider in the first instance the application of our holding to the relevant facts before it.
 
 VI.
 
 35
 The shareholders argue also that no statutory limitations period for actions at law controls this case because it falls within equity's exclusive jurisdiction. Relying on the Supreme Court's decision in Russell v. Todd, 309 U.S. 280, 60 S.Ct. 527, 84 L.Ed. 754 (1940), and this court's decision in Gruca v. United States Steel Corp., 495 F.2d 1252 (3d Cir.1974), they argue that the doctrine of laches governs the timeliness of an exclusively equitable claim. The shareholders contend that the only adequate remedies for their Section 14(a) claims are equitable in nature, namely the recision of the raincoat provisions and the voidance of the director elections, and thus the doctrine of laches and not the one-year/three-year limitations period governs the timeliness of this suit. The shareholders' argument sweeps too broadly. Their dependence on Russell and Gruca does not withstand an examination of the actual holdings in those cases and their application to the case before us.
 
 
 36
 In Gruca, we held that "[i]n the absence of any statute of limitations made applicable to similar equitable claims, equity has provided its own rule of limitations through the use of the doctrine of laches." 495 F.2d at 1257. In addition, we noted that when a federal court has concurrent jurisdiction in equity and at law, " 'equity will withhold its remedy if the legal right is barred by the local statute of limitations.' " Id. (quoting Russell v. Todd, 309 U.S. 280, 289, 60 S.Ct. 527, 84 L.Ed. 754 (1940)).
 
 
 37
 The Securities Exchange Act contains a statute of limitations applicable to "similar equitable claims." Section 18(a) of the Act, which creates a cause of action for materially misleading registration statements, expressly provides that a person may "sue at law or in equity in any court of competent jurisdiction." 15 U.S.C. § 78r(a). This same section states, "No action shall be maintained to enforce any liability created under this section unless brought within one year after the discovery of the facts constituting the cause of action and within three years after such cause of action accrued." 15 U.S.C. § 78r(c); see also Section 9(e), 15 U.S.C. § 78i(e) (one-year/three-year statute of limitations for all suits brought under law or in equity pursuant to this section). It is these provisions from which we originally borrowed the limitations period in Data Access. See 843 F.2d at 1545-49. Their similarity of purpose was the driving force behind our decision in Data Access and should be controlling here as well. We hold that the shareholders' claims for equitable relief are also governed by the uniform limitations period.
 
 VII.
 
 38
 Lastly, the directors contend that the shareholders' request for equitable relief is moot, at least in part, under this court's recent decision in General Electric v. Cathcart, 980 F.2d 927 (3d Cir.1992). In General Electric, we held that the plaintiffs' equitable claims with regard to the election of directors were moot because the terms of the directors elected during the time period in question had expired and a new election had taken place. Id. at 934. The court found that it could not do the impossible by enjoining directors from serving expired terms. Id.
 
 
 39
 On appeal, the shareholders have conceded that their challenge of the director elections from 1987 to 1989 "appear[s] to be moot" as the terms for Westinghouse directors expire after three years. The shareholders maintain, however, that their claim for monetary damages is not moot nor is their claim for equitable relief with regard to the raincoat provisions. In any event, it will remain for the district court to decide what contentions are or are not moot. We decide only that, for our purposes, certain claims are not moot, thus requiring us to meet the certified question on the merits.
 
 VIII.
 
 40
 Accordingly, we answer the certified question in the affirmative. The limitations period for Section 10(b) claims announced in Data Access applies also to claims brought under Section 14(a). It will be given retroactive effect.
 
 
 41
 The district court's order applying the six-year statute of limitations to the plaintiffs' Section 14(a) claims will be reversed.
 
 
 
 [1]
 Subsequent to this court's decision and prior to the Supreme Court's decision in Lampf, the Courts of Appeals for the Second and Seventh Circuits adopted the result and reasoning we announced in Data Access. See Ceres Partners v. GEL Assocs., 918 F.2d 349 (2d Cir.1990); Short v. Belleville Shoe Mfg. Co., 908 F.2d 1385 (7th Cir.1990), cert. denied, --- U.S. ----, 111 S.Ct. 2887, 115 L.Ed.2d 1052 (1991). A uniform federal limitations period was first suggested in a concurring opinion in Davis v. Birr, Wilson & Co., 839 F.2d 1369 (9th Cir.1988) (Aldisert, J., concurring)
 
 
 [2]
 Because the question certified relates to Data Access, we anchor our decision in this appeal on that case and do not meet the question of the retroactive application of Lampf to these proceedings. Nor do we consider the possible application of a Lampf- Beam analysis nor whether Section 27A of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa-1, has any application to proceedings under Section 14(a). By its express terms, Section 27A addresses only the retroactivity of a claim brought under Section 10(b)
 
 
 [3]
 Utilizing a Chevron Oil analysis in Panna v. Firstrust Savings Bank, 749 F.Supp. 1372, 1385 (D.N.J.1990), the court applied the teachings of Data Access retroactively to a Section 10(b) claim. ("Since plaintiffs have failed to satisfy the first and third factors of Chevron, and the second factor is neutral, we conclude that the rule of Data Access must be retroactively applied to bar plaintiffs' [Section] 10(b) and Rule 10b-5 claims...."); see also Gilmore v. Berg, 807 F.Supp. 1176 (D.N.J.1992)